[redacted]

**ROUX LABORATORIES, INC., Appellant,**

**v.**

**LA CADE PRODUCTS COMPANY, Appellee.**

**Patent Appeal No. 77–508.**

United States Court of Customs and Patent Appeals.

July 21, 1977.

[redacted]

[redacted]

Francis J. Sullivan, Dayton R. Stemple, New York City (Liddy, Sullivan, Hart, Daniels & Stemple, New York City), attorneys of record, for appellant.

John C. Brezina, Van Metre Lund, Chicago, Ill. (Brezina & Lund, Chicago, Ill.), attorneys of record, for appellee.

Before MARKEY, Chief Judge, RICH, BALDWIN, LANE and MILLER, Judges.

LANE, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board (board)[1] dismissing appellant's opposition against appellee's application for registration of the mark ULTRA MINK.[2] We affirm.

*Background*

La Cade Products Company (La Cade) filed an application to register the trademark ULTRA MINK (with a disclaimer of the exclusive right to the word MINK apart from the mark as shown) on the Principal Register for hair dressing and scalp conditioner. The application asserted first use of the mark on June 1, 1971.

1. 192 USPQ 458 (1976).

2. Trademark opposition No. 55,610 by Roux Laboratories, Inc., against La Cade Products Company's application serial No. 442,237, filed November 27, 1972.

Registration was opposed by Roux Laboratories, Inc. (Roux), which asserted prior and continuing use of the trademark WHITE MINX for hair coloring preparations; ownership of a Supplemental Registration of WHITE MINX for hair coloring preparation in the nature of a rinse;[3] and prior use of ultra WHITE MINX for hair coloring preparations. As testified on direct-examination by Roux's witness, Mr. Kuchinski, the management of Roux believed that: (1) in view of Roux's long and continued use of WHITE MINX and its use of ultra WHITE MINX, these marks were so similar to ULTRA MINK as to be likely, when La Cade's mark is applied to its goods, to cause confusion, inasmuch as M-I-N-K is pronounced the same way as M-I-N-X, and (2) since La Cade disclaimed the word MINK in its application, it was attempting to register for its exclusive use the *merely descriptive* word ultra. Accordingly, Roux pleaded two causes of action in its notice of opposition: (1) likelihood of confusion when the respective marks of the parties are applied to the respective goods of the parties, based on section 2(d) of the Trademark Act,[4] and (2) mere descriptiveness of La Cade's mark, based on section 2(e)(1) of the Trademark Act.[5]

In the board's view, however, the issues were significantly narrowed by Roux's voluntary statements made during the cross-examination of Mr. Kuchinski by La Cade's counsel. In the course of cross-examination, said the board, Roux's counsel withdrew and abandoned the cause of action based on likelihood of confusion and stated that the only issue in the case was the descriptiveness of La Cade's mark. The board decided the case on that basis. It found that ULTRA MINK is not merely descriptive and dismissed the opposition.

### Issue

The sole issue is whether the board erred in finding that Roux had abandoned the cause of action pleaded in its notice of opposition under section 2(d) of the Trademark Act.[6] This is an issue of first impression before the court.

### OPINION

We are in substantial agreement with the board's view of this case. Since the facts speak for themselves, the following colloquies between counsel for Roux, Mr. Sullivan, and counsel for La Cade, Mr. Brezina, are reproduced from the cross-examination of Roux's witness, Mr. Kuchinski (our emphasis supplied):

XQ98 * * *

When did your company first have knowledge of any use of Blue Mink and hair shampoo by Lawrence Pharmaceuticals?

MR. SULLIVAN: I object to this line of questioning on the grounds that it is entirely irrelevant. *The only issue herein involved is whether or not the applicant is entitled to use "ultra" as a trademark.*

*We are not involved with the question involving the Trademark M-i-n-k, which has been disclaimed by the applicant.*

*Our objection is based solely on applicant's use of "ultra."*

\* \* \* \* \* \*

---

3. Reg. No. 718,750, issued July 18, 1961; Sec. 8 affidavit accepted.

4. Section 2(d), 15 U.S.C. § 1052(d), reads in pertinent part:

> Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive * * *

5. Section 2(e)(1), 15 U.S.C. § 1052(e)(1), reads:

> when applied to the goods of the applicant is merely descriptive or deceptively misdescriptive of them * * *

6. Before us, Roux has abandoned its argument with respect to the descriptiveness issue. It asks only that we remand to the board for a consideration of the question of likelihood of confusion on its merits.

XQ109 I show you Applicant's Exhibit 2, which is a principal registration for "Blue Mink" for liquid spray for style setting of hair issued to James V. Freeman, Incorporated, doing business as James V. Freeman, Inc., of Jacksonville, Florida.

First of all, are you familiar with that mark as used on that product?

MR. SULLIVAN: Excuse me. I object to this line of questioning on the grounds that it is immaterial° as to whether or not there are existing registrations which include "mink," m-i-n-k or m-i-n-x in the name of other than the opposer.

*The only issue involved here is whether or not the applicant is entitled to obtain a registration of the term "ultra" as a trademark so as to preclude competitors from using it properly as a descriptive term.*

A continuing objection to all of these registrations.

\* \* \* \* \* \*

XQ121 Is there any agreement with Leon Products about their use of the term "Mink" with other prefixes other than "White"?

MR. SULLIVAN: I would like to renew my running objection that *the only question involved here is the applicant's right to use the descriptive term "ultra."*

*We do not object to its use of the term "Mink," which has been disclaimed by applicant.* Neither have we objected to the use of others using the term "Mink," but *we are objecting to the use of the descriptive term "ultra"* which we had adopted and used as part of the "ultra White Minx" trademark but using "ultra" merely in its descriptive connotation, *and that is the whole substance of this opposition.*

\* \* \* \* \* \*

RXQ179 Does Roux in this case contend that there is confusing similarity between marks containing the suffix "Mink" and "Minx," M-i-n-x.

MR. SULLIVAN: The record will show, the notice of opposition will show, that Roux maintains that the applicant has disclaimed the word "Mink" and the only word remaining in its registration not disclaimed is the descriptive term "ultra"; and if ultra has any trademark connotation, it was used previously to the first use of applicant by opposer.

RXQ180 Do you adopt that as an answer to my question?

A Definitely.

■ We agree with the board that the unequivocal meaning of Mr. Sullivan's statements is that Roux from that point on relied on the cause of action pleaded under section 2(e)(1) of the Act only, having abandoned the cause of action pleaded in the notice of opposition under section 2(d) of the Act. Roux's main argument is that 37 CFR 2.116(a)[7] makes the Federal Rules of Civil Procedure applicable to inter partes proceedings. Roux urges that the Federal Rules, specifically Fed.R.Civ.P. 8(e) and 8(f),[8] provide for alternative pleadings

---

7. 37 CFR 2.116(a) reads:

Except as otherwise provided, and wherever applicable and appropriate, procedure and practice in inter partes proceedings shall be governed by the Federal Rules of Civil Procedure.

8. Rules 8(e) and 8(f) read as follows:

(e) *Pleading to be concise and direct; consistency.*

(1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.

(2) A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal, equitable, or maritime grounds. All statements shall be made subject to the obligations set forth in Rule 11.

(f) *Construction of pleadings.* All pleadings shall be so construed as to do substantial justice.

which shall be so construed as to do substantial justice. We fully agree. The point is, however, that in this proceeding Roux expressly abandoned the cause of action pleaded under section 2(d). That Roux was entitled to set forth alternative causes of action in its notice of opposition is not controverted. However, Roux here urges an altogether different proposition, viz., that it was entitled to make statements during the testimony period expressly abandoning one of the causes of action and that it should not be bound by those statements now. On the contrary, we believe that Roux's statements necessarily gave rise to an equitable estoppel which prevents Roux from now asserting that likelihood of confusion is an issue. It seems clear to us that any other ruling would have a negative effect on the orderly administration of inter partes proceedings before the board.

Roux further argues that "counsel's statement[s] made in objecting to cross-examination, which is directed at any given moment to a highly specific set of circumstances, are not being carefully thought out in the sense of preparation of a complaint or answer thereto * * *." However, while Mr. Sullivan's statements may not have been "carefully thought out," his adversary relied on those statements during the testimony period by neither pursuing cross-examination nor filing exhibits relating to the issue of likelihood of confusion. Such reliance was reasonable in view of Mr. Sullivan's repeated statements that the only issue in the case was descriptiveness, and Roux cannot now resurrect an issue which it has affirmatively stated was not an issue on this record.

In conclusion, we hold that the board did not err in finding that Roux had abandoned the cause of action pleaded in its notice of opposition under section 2(d) of the Trademark Act. The decision of the board is, accordingly, *affirmed*.

*AFFIRMED.*