**WEINER KING, INC., Appellant,**

v.

**The WIENER KING CORPORATION, Appellee.**

**Appeal No. 79–575.**

United States Court of Customs and Patent Appeals.

Feb. 7, 1980.

Rehearing Denied April 17, 1980.

R. Gale Rhodes, Jr., Jeffrey L. Miller, Newark, N. J., attorneys of record for appellant.

Floyd A. Gibson, Charlotte, N. C., attorney of record for appellee; James D. Myers, Charlotte, N. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Judges, and NEWMAN,* Judge.

RICH, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (TTAB), *Weiner King, Inc. v. The Wiener King Corporation*, 201 USPQ 894 (TTAB 1979), which determined the right to register the marks of the parties in this consolidated cancellation and concurrent use proceeding.[1] We modify.

*Background*

Seven marks are involved in the present controversy. Appellant, Weiner King, Inc., a New Jersey corporation (hereinafter "Weiner King"), seeks to cancel the registrations belonging to appellee, The Wiener King Corporation, a North Carolina corporation (hereinafter "WKNC"), which are reproduced below:

WIENER KING

Reg. No. 934,597

Wiener King

Reg. No. 934,596

Reg. No. 927,504

WKNC seeks to register the following two marks as a concurrent user. It claimed in its application the right to use the marks in the entire United States except for the County of Hunterdon and counties contiguous to Hunterdon County in the State of New Jersey.

The TTAB also acted on two of appellant's applications, serial Nos. 53,553, and 53,554, which were being prosecuted ex parte, by recommending that the applications be refused registration until amended to claim territorially restricted use in conformity with the TTAB decision in these proceedings. 201 USPQ at 917 n. 15.

---

* The Honorable Bernard Newman, Judge, United States Customs Court, sitting by designation.

1. Appellant is cancellation petitioner in Cancellation Nos. 10,918, 10,919, and 10,920. Appellee is concurrent use applicant in Concurrent Use Proceeding No. 394. On Nov. 7, 1975, these proceedings were formally consolidated by the TTAB on appellee's unopposed motion.

Ser. No. 12,605

Ser. No. 12,606

In disposing of the action below, the TTAB made a recommendation that two applications for registration made by Weiner King be refused registration until territorially restricted to comply with the decision of the TTAB. These marks are:

WEINER KING

**ORIGINAL TEXAS WEINER**

Ser. No. 53,554

Ser No. 53,553

Neither this court nor the TTAB has approached this case with a clean slate. The issues before us have been the subject of litigation in the United States District Court for the District of New Jersey and the Third Circuit Court of Appeals. In order to come to a reasoned decision in this case, we must first explore the factual background which generated this controversy and the treatment given it by those courts.

*a. Factual Background*

Weiner King first used its mark in connection with restaurant services in 1962. As the mark suggests, the main fare offered by Weiner King in its restaurants consists of "hot dogs." The first use of the mark was in conjunction with a single restaurant opened by Weiner King in Flemington, New Jersey in 1962. In 1966, Weiner King incorporated in the State of New Jersey. In 1967, it opened a second restaurant in Flemington using the mark. In 1973, Weiner King opened a restaurant using the mark in Beach Haven, New Jersey, and in 1975 it opened a third restaurant in Flemington. Except for the Beach Haven facility, Weiner King's continuous use of the mark in connection with its services has not been questioned. Despite its use of the mark since 1962, Weiner King did not apply for federal registration of the mark until May, 1975.

WKNC began using its mark in 1970 in North Carolina in connection with restaurant services. Its adoption of the mark was innocent; that is, it had no notice, constructive or actual, of the existence of Weiner King at the time the mark was adopted. WKNC began by opening a single restaurant in the State of North Carolina. Like Weiner King, WKNC's restaurants specialize in serving "hot dogs." Thus, the services offered under the respective marks are

virtually identical as are the marks themselves.

In May of 1972, prior to learning of the existence of Weiner King, WKNC procured three registrations of variations of its mark under the Lanham Act. By that time, WKNC had in operation eleven company-owned WIENER KING restaurants. WKNC's applications for registration were not opposed.

WKNC first learning of Weiner King's use of WEINER KING and crown design in connection with its Flemington operations in July, 1972. In late 1972, it learned of Weiner King's 1966 incorporation in the State of New Jersey. At that time, WKNC had not yet come into, nor had it laid plans to come into, New Jersey.

After learning of the existence of Weiner King, WKNC continued its expansion and began offering for sale, and advertised for the purpose of offering for sale, franchises throughout the United States, including New Jersey. Considerable sums were spent on advertising the availability of franchises between 1973 and 1975. In contrast, Weiner King has advertised very little, and then only in and near Flemington. Weiner King has never advertised or offered for sale franchises for restaurants under the name WEINER KING.

WKNC's expansion, subsequent to its actual notice of the existence of Weiner King, has been extensive. By late 1975, WKNC had more than 100 facilities in 20 states which were either open, under construction, or under site development.

On February 4, 1974, WKNC filed applications for three territorially unrestricted registrations under the Lanham Act for stylized variations of its mark WIENER KING. Three days after the marks were published for opposition, on November 29, 1974, it sought to amend its applications to reflect Weiner King's right to use its mark as a concurrent user in Hunterdon County, New Jersey, and counties contiguous to Hunterdon County.

On May 5, 1975, Weiner King petitioned the PTO to cancel WKNC's federal registrations on the ground of prior use. On May 29, 1975, Weiner King filed territorially unrestricted applications to register WEINER KING and a stylized variation thereof for restaurant services, alleging a date of first use as early as 1962.

Shortly thereafter, on June 11, 1975, Weiner King filed a civil action against WKNC in the United States District Court for the District of New Jersey, claiming a violation of its rights under 15 U.S.C. § 1125(a), Lanham Act § 43(a), "False designation of origin and false descriptions forbidden." It also asserted causes of action for common law unfair competition and New Jersey state trademark infringement and fraudulent advertising.

On the next day, June 12, 1975, concurrent use proceedings were declared in the PTO on the basis of WKNC's applications, with Weiner King made a party. On November 7, 1975, on motion of WKNC, the TTAB formally consolidated the concurrent use and cancellation proceedings and then suspended them pending the outcome of the civil action.

*b. The Civil Action*

In the District Court,[2] Weiner King sought to enjoin WKNC and its prospective licensees from using the WIENER KING marks in the state of New Jersey. In addition, it sought an accounting of profits, costs, and cancellation of WKNC's federally registered marks.

The court granted a preliminary injunction preventing WKNC and its prospective licensees from using their mark within 20 miles of Flemington, and within 20 miles of Beach Haven, New Jersey. At that time, the court advised the parties that the critical issue for trial was the extent of Weiner King's trade territory wherein it was entitled to protection as a prior user of its mark.

From stipulated facts and evidence presented, the court granted Weiner King a

---

2. The District Court opinion is reported at 407 F.Supp. 1274 (D.N.J.1976).

permanent injunction prohibiting WKNC from using its mark within the state of New Jersey and in the state of Pennsylvania within 40 miles of Flemington, New Jersey.

The District Court also ordered that WKNC's registrations be cancelled and that the PTO determine the rights of the parties in the concurrent use proceedings which had been suspended pending the outcome of trial.

WKNC appealed to the Third Circuit Court of Appeals.[3] After reviewing the evidence, the court held that Weiner King had failed to meet its burden of establishing the extent of its trade area as found by the District Court.

Specifically, the court found support lacking for the District Court's finding that Weiner King's zone of reputation extended throughout the state of New Jersey and into a part of Pennsylvania. It concluded that, on the basis of Weiner King's advertising and reputation, its protection should be limited to the areas in which its products are sold, i. e., Flemington, New Jersey. However, the court noted that WKNC had conceded Weiner King's right to protection within a 15-mile radius of Flemington and therefore set the limit of the area in which WKNC could be enjoined to within 15 miles of Flemington.

The appellate court agreed with the District Court's decision that the PTO was the proper place in which to decide the issues of the concurrent use proceeding, and was thus puzzled at its decision to cancel WKNC's registrations. It therefore directed that both the cancellation and concurrent use issues be determined in the PTO.

In directing that these issues be determined in the PTO, the court also thought it appropriate for the PTO to consider the issues concerning the rights to use in Beach Haven, and it so ordered. It directed the District Court to modify its injunction to prevent WKNC from using its marks on

Long Beach Island, New Jersey, where Beach Haven is located, to preserve the status quo while the PTO determined the rights of the parties to use of their marks at that location.

### The TTAB

After extensively reviewing the statutory and common law relating to trademarks, the TTAB[4] enunciated several principles forming the basis for the issuance of concurrent use registrations or the resolution of territorial disputes between trademark users (201 USPQ at 915):

These comprise the right of a prior user to protection and registration of its mark to reflect its rights; the right of a good faith and innocent junior adopter and user (prior to actual or constructive notice), in a territory sufficiently distinct so as not to conflict with or cause confusion with a senior party's use in another area, to defend against encroachment on its rights by the senior party in the junior party's trading area and to reflect such rights by registration; the avowed purpose of the Lanham Act to grant nationwide protection for expanding businesses by registration; and the reflection of this purpose through the presumptions afforded a registration through Section 7(b) including the prima facie presumption of the right to the exclusive use of the registered mark in commerce.

The TTAB declared that these rights must nonetheless be balanced in light of the particular facts of each case in order to strike an equitable balance between the competing interests of the users of the marks and the buying public, which is entitled to a purchasing environment free of a likelihood of confusion.

Turning to the facts, the TTAB, referring to the decision of the District Court, noted that Weiner King "was thus content * * to maintain a small and locally oriented operation for some 13 years; and even now

---

3. The 15-page per curiam opinion of the Court of Appeals for the Third Circuit, filed October 21, 1976, reversing and remanding, is reported at 192 USPQ 353 (3 Cir. 1976).

4. Reported at 201 USPQ 894 (TTAB 1979).

it does not claim it plans to open restaurants at sites in New Jersey other than Flemington (and Beach Haven)." 201 USPQ at 915, *quoting* 407 F.Supp. at 1282. It found that Weiner King's advertising and promotional activities over the years were restricted to within 15 miles of Flemington. The TTAB also noted that Weiner King's Beach Haven facility lay outside of Weiner King's reputation zone, and that the use of the facility was sporadic, and, further, that there was no evidence that Weiner King has acted further to penetrate that area. In addition, the TTAB noted that the facility has been closed since Weiner King lost its lease at that location.

With respect to the facilities opened by Weiner King after 1975, the TTAB found that the opening of a facility in Warminster, Pennsylvania, in 1976 was accomplished with knowledge of the existence of WKNC and the present controversy, and was thus "nothing more than a belated attempt or after-the-fact effort to expand its trading area before the appellate decision and in the face of WKNC's activities in that area with franchisees. This could hardly be considered good faith use." 201 USPQ at 915. The same conclusion was reached with respect to Weiner King's White House, New Jersey, facility, although the TTAB was not sure that White House lies outside of the 15-mile radius around Flemington.

Turning to WKNC's activities in connection with its mark, the TTAB found, as did the courts, that WKNC's adoption of its mark was in good faith, without notice of the existence of Weiner King and its use of its own mark. The TTAB found that WKNC expanded in accordance with its asserted purpose and "actively pursued a franchising operation, expanding in and around and up from North Carolina until, at the time of the District Court trial, it had restaurants in operation, under construction or under site development in twenty states." *Id.* at 916.

Although the TTAB noted that some of the expansion did occur after WKNC learned of the existence of Weiner King, it stated that the courts had found facts which indicated that WKNC's zone of potential expansion included the remainder of the United States. While granting that WKNC's expansion into New Jersey was not in good faith, the TTAB took account of the District Court's finding, with respect to the remainder of the United States, that:

Reason and common sense compel the conclusion that the defendants [WKNC and associates] are not seeking to trade upon or profit from the name or reputation of another, the plaintiff [Weiner King]. Instead they seek to gain from their own good will founded upon the use of "WIENER KING" throughout a large part of the United States. To put it succinctly, this is not a "palming off" case where the subsequent user attempts to confuse the public into believing his product is that of the prior user. [201 USPQ at 916, *quoting*, 407 F.Supp. at 1282. Bracketed insertions by the TTAB.]

In support of this conclusion, the TTAB pointed to WKNC's franchising activities which steadily increased until WKNC had 137 restaurants in 34 states, and the fact that WKNC spent a considerable amount in advertising and promotional activities and had sales of over thirty-two million dollars in a two-year period.

The conclusion of the TTAB is best shown by the following portion of its opinion (201 USPQ at 916):

Considering therefore WKNC's innocent adoption and registration of its "WIENER KING" marks and its extensive expansion of activities under the marks in a natural progression following the good will of the mark and accompanied by large advertising efforts and commercial success contrasted with Weiner King's inaction over a thirteen-year period with a minimum of market penetration outside of its trading area, which suggests a local operation with no intent to expand until WKNC appeared on the horizon accompanied by a considerable good will and reputation, it becomes abundantly clear why the courts have

restricted Weiner King to the Flemington area and left the door open outside that area to WKNC. The courts recognized and the Board recognizes the facts of life in a situation such as this namely, that Weiner King has, in essence, through inaction over a considerable period of time abandoned its rights in the mark "WEINER KING" outside of its trading area and that such rights as Weiner King may have acquired through prior use must yield to WKNC as an innocent user and registrant (this is obviously not a case of a race to the Office for registration) with an expanding nationwide business fulfilling the avowed purpose of the Act of 1946. To do otherwise would permit Weiner King "to reap where it has not sown" and garner, without any effort on its own, all the good will in the mark "WIENER KING" established by WKNC. On the basis of this record, it is an inescapable conclusion that, outside of Weiner King's little enclave, "WIENER KING" means WKNC's restaurants and, to allow Weiner King to step out of its trading area, would cause confusion to the purchasing public and inestimable damage to WKNC. [Citations omitted.] Moreover, to hold otherwise would only serve to encourage the "ambush" of nationwide franchise operations by local merchants whose activities were [not] or could not have been discovered prior to the institution of the expansion program.

In accordance with the above reasoning, the TTAB granted Weiner King's petitions to cancel to the extent that WKNC's registrations were restricted to exclude Weiner King's trading area, as determined by the TTAB, viz.: a fifteen-mile radius around Flemington, New Jersey. WKNC's applications for concurrent use were granted upon amendment of the applications to indicate Weiner King's trading area of a 15-mile radius around Flemington.

The TTAB also recommended that Weiner King's application to register be denied unless and until they are amended to reflect an area of right to use within a 15-mile radius of Flemington.

Although not specifically stated in the "Decision" portion of the TTAB's opinion, it is clear from the relevant portion of its opinion, discussed supra, that the TTAB held that Weiner King has no rights in Beach Haven, New Jersey, because of sporadic use and abandonment.

### Appellant's Arguments

Appellant Weiner King mounts a four-pronged attack on the decision of the TTAB. It alleges both substantive and procedural error.

Weiner King first argues that the TTAB erred in applying equitable principles, and that those principles, in fact, cut the other way and require that it, and not WKNC, be granted the larger scope of territorial rights.

For this argument, Weiner King relies on the fact that WKNC accomplished the lion's share of its expansion only after it had actual notice of the existence of Weiner King and its use of the WEINER KING marks. The TTAB finding of a lack of an intent to "palm off" on the part of WKNC is asserted to be irrelevant because the absence of such an intent "does not constitute a basis for according a right to registration in an area where expansion was undertaken after notice." Weiner King relies on *Tie Rack Enterprises, Inc. v. Tie Rac Stores,* 168 USPQ 441 (TTAB 1970), and *Old Monastery Wine Co. v. St. Julian Wine Co.,* 110 USPQ 241 (Comm'r.1956), for the proposition that a junior user cannot obtain a right to registration in an area wherein it elects to expand its use after knowledge of another's prior use. It asserts that a lack of bad faith, i. e., no palming off, does not constitute good faith which would support a right to registration.

Weiner King notes that since neither the District Court nor the Third Circuit sustained any of the equitable defenses pleaded by WKNC in the civil action, the equities of this case have been adjudicated in its favor. These defenses included laches, estoppel, and acquiescence; Weiner King argues that, once litigated, these issues cannot be relitigated in this proceeding.

Weiner King also disputes the finding of the TTAB that it has abandoned its rights to registration on the apparent ground that the TTAB viewed its expansion into Beach Haven and White House, New Jersey, and Warminster, Pennsylvania, as bad faith expansion.

In the second prong of its attack on the TTAB decision, Weiner King states that the TTAB erred in finding that there is an "avowed purpose of the Lanham Act to grant nationwide protection for expanding businesses." It cites what it avers to be the stated purpose of the Act, as found in the Senate Report accompanying the bill: "to eliminate judicial obscurity." S.Rep.No. 1333, 79th Cong., 2d Sess. (1946).

According to Weiner King, both the TTAB and this court have stated the purpose of the Act in terms which are antithetical to the position the TTAB has taken here. This purpose is said to be to protect a first user of a mark by a system of constructive notice whereby the first user may preempt, by registration, the right of all others to use the registered mark in remaining virgin territory, even though the first user may actually be using the mark in only a few states. Consistent with this purpose would be the recognition of the rights of a subsequent user only if they were established prior to notice of the prior user. For this proposition, Weiner King relies on *Giant Foods, Inc. v. Malone & Hyde, Inc.*, 522 F.2d 1386, 187 USPQ 374 (Cust. & Pat.App. 1975), and *Tie Rack Enterprises*, supra.

In the third prong of appellant's attack on the TTAB decision, Weiner King argues that WKNC's registrations, to which the benefits of § 15 of the Lanham Act (15 U.S.C. § 1065) have not yet attached, do not confer upon WKNC a right to use superior to that of Weiner King as a prior user. The TTAB had relied on *John R. Thompson Co. v. Holloway*, 366 F.2d 108, 150 USPQ 728 (5th Cir. 1966), discussing the constructive notice provision of the Lanham Act (15 U.S.C. § 1072):

By eliminating the defense of good faith and lack of knowledge on the part of the junior user, sections 1072 and 1115 [giving the exclusive right to use the mark] afford a registrant nationwide protection for its registered marks, regardless of the geographic area in which the registrant actually uses his mark. [366 F.2d at 115, 150 USPQ at 734.]

Weiner King observes that the above-quoted portion of the opinion in that case establishes that these alleged "substantive" rights inure to the benefit of the prior user, even though it questions the TTAB's reliance on this case, which it says has been frequently misinterpreted.

The fourth and final prong of Weiner King's attack on the TTAB decision is procedural and relates to the admission of portions of WKNC's testimony into evidence, which Weiner King asserts was error on the part of the TTAB because of the following circumstances.

During the discovery period set by the TTAB, Weiner King served interrogatories upon WKNC, seeking to discover facts upon which WKNC would rely to establish the chronology and geographical extent of its use of its marks. WKNC objected to and refused to answer interrogatories on the ground that "the requested information is entirely irrelevant and immaterial to any issue currently involved in this combined concurrent use and cancellation proceeding." The objections to interrogatories concluded with an invitation to the TTAB to rule on the objections without a specific request to do so. Later, during the testimony period, WKNC attempted to introduce into evidence, through the deposition of Ronald W. Howard, WKNC's president, evidence of facts bearing on those very issues. Weiner King's counsel entered a continuing objection to this line of testimony, consented to by his opponent. The TTAB, in its final opinion, while noting the general rule which prohibits consideration of testimony in such circumstances, considered the evidence, stating that, in this case, "it is believed that the benefit to the Board in receiving this evidence to aid it in resolving the complicated issues herein more than offsets any prejudice to Weiner King."

Weiner King now argues that WKNC's refusal to provide discovery on facts concerning its service mark use constitutes an extrinsic bar to admissibility of evidence about those facts, citing *Roux Laboratories, Inc. v. LaCade Products Co.*, 558 F.2d 33, 194 USPQ 542 (Cust & Pat.App.1977), *aff'g* 192 USPQ 458 (TTAB 1976).

## OPINION

■ Two courts and the TTAB have decided that the marks are confusingly similar, and that confusion in the marketplace if the marks are used side by side is not only likely but certain. The parties do not dispute this finding. Therefore, the single issue, resolution of which will dispose of the entire dispute now before us, is the territorial extent of the right of each party to use its marks, and hence their respective rights to registration.[5]

■ As a preliminary matter, we will first dispose of the procedural point raised by the fourth prong of Weiner King's attack, supra. We agree with Weiner King that the disputed evidence was inadmissible and therefore should not have been considered by the TTAB. We see this issue as one of fundamental fairness in the conduct of litigation.

WKNC's refusal to provide discovery, found in its objections filed in response to Weiner King's interrogatories, stated:

* * * the requested information is entirely irrelevant and immaterial to any issue currently involved in this combined concurrent use and cancellation proceeding. These same parties and the issues of actual trade area, area of probable expansion and reputation zone were involved in a case decided by the United States District Court for the District of New Jersey and by the Court of Appeals for the Third Circuit. These courts made findings of fact and conclusions of law with respect to all issues involved in this proceeding and *which render the information requested by Weiner King, Inc. in its inter-rogatories 4–18 totally irrelevant and immaterial.* [Emphasis ours.]

■ This statement amounts to a representation by WKNC that all of the information concerning the issues of trade area, reputation zone, and zone of probable expansion, available from the records and decisions of the courts in the civil action between these parties, is all that WKNC would rely on with respect to those issues. Where a party seeks to discover facts which it expects the other party to introduce into evidence and the other party represents that all of those facts are already of record, the first party has a right to expect reliance by the other party on those facts of record alone. Any attempt, in such circumstances, to introduce further testimony about those or other facts bearing on the same issues amounts to the type of surprise that the Federal Rules of Civil Procedure were designed to avoid.

WKNC's argument that it invited a ruling by the TTAB on the issue is without merit. As Weiner King aptly notes, the invitation would not have come to the attention of the TTAB until it had considered the response to the interrogatories during or after the testimony period. *See* 37 CFR 2.120(b).

Moreover, and more importantly, WKNC's objection to the interrogatories amounted to a representation that this information would not be the subject of testimony. The proposition that Weiner King should have made a motion to test the sincerity of this representation is patently absurd.

In this context, it is irrelevant that the TTAB found the information to be of "benefit to the Board * * * to aid it in resolving the complicated issues herein" (201 USPQ at 903 n. 7). Use of the disputed testimony violates Weiner King's procedural rights. We hold that WKNC's representations give rise to equitable estoppel preventing it from introducing such testi-

---

5. The right to register a mark flows from the right to use it. According to § 1 of the Lanham Act, only the owner of a mark may register the mark. Ownership flows from adoption and use.

mony. *Cf. Roux Laboratories, Inc.*, 558 F.2d at 36, 194 USPQ at 544.

We turn now to the merits of this dispute. We find ample support for the TTAB decision in the record, without the disputed testimony. Application of equitable principles, the policy and substance of the Lanham Act, and common law trademark principles to the facts of this case require that we affirm the decision of the TTAB with the exception of its ruling re Beach Haven.

■ Weiner King was the first to adopt and use its mark WEINER KING. Later, WKNC innocently adopt its mark WIENER KING in a market area remote from that of Weiner King's market area. Under such circumstances, it is settled law that each party has a right to use its mark in its own initial area of use. *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918); *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed.2d 713 (1916). In dispute here are the *registrable rights* to the remainder of the United States possessed by each party.

This case takes on an added dimension of complexity for two reasons: WKNC, the later adopter, was the first to register its mark under the Lanham Act; and, even though an innocent adopter, WKNC underwent a large portion of its expansion after notice of the existence of Weiner King and its use of the WEINER KING mark in the Flemington, New Jersey, area.

■ Weiner King's major contention on appeal is that any expansion on the part of WKNC which occurred after it learned of Weiner King and the use of the WEINER KING mark was at WKNC's peril and cannot serve as a basis for a right to register as a concurrent user in any of the areas it entered after notice. We do not agree.

It is said that nature abhors a vacuum. The same may be said of equity; it must operate in a factual environment. The TTAB had the task of balancing the equities between a prior user who remained content to operate a small, locally-oriented business with no apparent desire to expand, and who, until recently, declined to seek the benefits of Lanham Act registration, and a subsequent user, whose expressed purpose has been, from its inception, to expand into a nationwide franchising operation, and who has fulfilled its purpose, taking advantage of Lanham Act registration in the process.

A crucial question brought into issue by Weiner King is the character of WKNC's expansion which occurred subsequent to its learning of Weiner King's existence. If it was in bad faith it cannot support a right to registration for use in those areas.

The District Court found that this expansion was not an attempt to "palm off" or trade on the reputation of Weiner King. "Instead, they [sought] to gain from their own goodwill, founded upon the use of 'Wiener King' throughout a large part of the United States." 407 F.Supp. at 1282. This finding was undisturbed on appeal. It is binding on the parties by stipulation.

■ The only basis urged by Weiner King for absence of good faith on the part of WKNC is the fact that WKNC expanded out of North Carolina with notice of Weiner King's existence and use of its WEINER KING mark. We hold that this reason is legally insufficient to support a finding of bad faith. In so holding, we caution that such a determination must always be the product of the particular fact pattern involved in each case. While an attempt to "palm off," or a motive to "box in" a prior user by cutting into its probable area of expansion, each necessarily flowing from knowledge of the existence of the prior user, might be sufficient to support a finding of bad faith, *mere knowledge of the existence of the prior user* should not, by itself, constitute bad faith.[6]

6. This approach has received favorable comment. *See* Meyers, *Conflicting Rights in the Same Trademark in Different Geographical Areas; Should Knowledge of Prior Use Amount to Bad Faith?*, 37 Fed.Bar J. 82 (No. 4, Fall 1978); Kaul, *Concurrent Use and Registration of Trademarks*, 62 T.M.Rep. 581, 597–600 (1972). In addition, the common law has been

Turning to the fundamental question in this case, i. e., who gets what territory, this court has suggested certain criteria which are helpful in resolving this question. In *In re Beatrice Foods Co.*, 429 F.2d 466, 475, 57 CCPA 1302, 1312–13, 166 USPQ 431, 437–38 (1970), this court noted that actual use in a territory was not necessary to establish rights in that territory, and that the inquiry should focus on the party's (1) previous business activity; (2) previous expansion or lack thereof; (3) dominance of contiguous areas; (4) presently-planned expansion; and, where applicable (5) possible market penetration by means of products brought in from other areas.[7]

■ In the present case, reliance on factors 1–4 weighs overwhelmingly in favor of WKNC. This is clear from the stipulated findings in the civil action alone, which demonstrate that Weiner King comes up virtually empty-handed in all of the categories. While we could stop here, there are several other reasons why, in this case, the decision of the TTAB should be affirmed.

In appropriate situations, courts have restricted a prior user to its actual trade territory in favor of a later user who has appeared on the horizon. *See Jacobs v. Iodent Chemical Co.*, 41 F.2d 637 (3d Cir. 1930).[8] In *Zimmerman v. Holiday Inns of America*, 438 Pa. 528, 266 A.2d 87 (1970), *cert. denied*, 400 U.S. 992, 91 S.Ct. 456, 27 L.Ed.2d 440 (1971), the facts revealed that a local motel operator had unsuccessfully sued a nationwide franchise motel chain which he felt was encroaching on his territory, thus alerting the chain, a later user, to his existence. The later used then opened fifteen additional motels in the state. In a subsequent suit to enjoin the chain, the court, noting a lack of bad faith on the part of the chain, limited injunctive relief to an area within twenty-two miles of the local operator's motels. The Pennsylvania Supreme Court affirmed, thus acknowledging the right of the later user to operate in areas into which it had expanded after notice of the existence of the prior user.

The commentators have not been silent on this issue. Restriction of a prior user to its actual trade territory and zone of probable expansion has been noted. *See* 2 J. McCarthy, *Trademarks and Unfair Competition*, § 26:8 at 218 & n. 13 (1973). One established authority has stated that the *Hanover* and *Rectanus* cases, supra, "are based on the theory that the prior user in each case abandoned its right to expand its trade when it failed to exercise that right." 1 H. Nims, *Unfair Competition and Trade Marks*, § 218(b) at 645 (4th ed. 1947). This is precisely the principle relied upon below by the TTAB. 201 USPQ at 916.

We also find it significant that WKNC was the first to register its mark. In *Giant Foods, Inc. v. Malone & Hyde, Inc.*, 522 F.2d at 1396, 187 USPQ at 382, a majority of this court stated:

> The winner of the race for [virgin territory], according to our system of federal registration, is the senior user *at least in those instances* where he is also the first to apply for a federal registration. [Emphasis ours.]

It was thus implicitly recognized that there is a policy of encouraging prompt registration of marks by rewarding those who first seek registration under the Lanham Act. We restated this policy again in *In re Beatrice Foods Co.*, 429 F.2d at 474 n. 13, 57 CCPA at 1311 n. 13, 166 USPQ at 436 n. 13:

> [W]here the prior user does not apply for a registration before registration is granted to another, *there may be valid grounds, based on a policy of rewarding*

---

most concerned with good faith adoption and use of marks on the part of a later user. While it is clear that appropriation of a mark with knowledge that it is being used by another is not in good faith, it does not follow that a later user who has adopted in good faith *must* forego any further expansion after learning of the prior user. We believe that, even under the common law, such an issue depends on such factors as natural area of expansion, the possibility of encroachment on the area of the other party, and other equitable considerations.

7. The TTAB used these criteria in reaching its decision. 201 USPQ at 909–910.

8. *See also* cases cited by the TTAB in its opinion, 201 USPQ at 910.

*those who first seek federal registration, and a consideration of the rights created by the existing registration, for limiting his registration to the area of actual use and permitting the prior registrant to retain the nationwide protection of the act restricted only by the territory of the prior user.* [Emphasis ours.]

We deem this to be sound policy when applied in the proper case, as determined by its facts and circumstances. From our view of the facts and circumstances here, this is a proper case.

Section 2(d) of the Lanham Act (15 U.S.C. § 1052(d)) also supports the decision of the TTAB. One of the stated purposes of the act, to prevent consumer confusion, *see* H.R.Rep.No.219, 79th Cong., 1st Sess. 2 (1945); S.Rep.No.1333, (1946), is embodied in § 2(d), which reads in pertinent part:

No trademark * * * shall be refused registration * * * unless it—

(d) Consists of or comprises a mark which so resembles * * * a mark * * * previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive: *Provided,* That when the Commissioner determines that confusion, mistake, or deception is not likely to result from the continued use by more than one person of the same or similar marks under conditions and limitations as to the mode or place of use of the marks

* * * concurrent registrations may be issued to such persons * * *. In issuing concurrent registrations, the Commissioner shall prescribe conditions and limitations as to the mode or place of use of the mark * * *.

Section 2(d) recognizes that, under certain conditions, more than one party may have a right to use, and hence to register, a given mark. The proviso of § 2(d) instructs the Commissioner that, when issuing concurrent registrations, he is to impose conditions and limitations to the use of the mark by the concurrent registrants. It is plain that these conditions and limitations are to be imposed for the purpose of preventing consumer confusion. The proviso exhibits no bias in favor of the prior user.

The TTAB found that "it is an inescapable conclusion that, outside of Weiner King's little enclave, 'WIENER KING' means WKNC's restaurants and to allow Weiner King to step out of its trading area, would cause confusion to the purchasing public." 201 USPQ at 916. By finding that Weiner King's reputation zone is a circle with a 15-mile radius, the Third Circuit has made essentially the same finding. It is binding on the parties by stipulation. In light of this fact, the issuance to Weiner King of a concurrent registration which encompasses the entire United States except for the state of North Carolina would serve only to foster the very confusion which the act was meant to prevent.[9]

**9.** Weiner King cites several cases in support of its position that it, as prior user, be granted registration for the entire United States except for the territory occupied by WKNC prior to its notice of the existence of Weiner King and its use of the WEINER KING marks. We find these cases to be distinguishable on their facts.

In *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.,* 408 F.Supp. 1219, 189 USPQ 17 (D.Colo.), *aff'd,* 561 F.2d 1365, 195 USPQ 417 (10th Cir. 1977), *cert. dismissed,* 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978), plaintiff prior user had used the mark in actively selling goods in fourteen states before the junior user flooded the national advertising media with advertising for identical goods under the same mark. At that time, the parties had been attempting to negotiate an agreement concerning the use of the marks, but the junior user went

ahead with its advertising before any agreement was reached. The potential for confusion in that case was readily apparent.

With respect to *Tie Rack Enterprises,* supra, we agree with the conclusion of the District Court, 407 F.Supp. at 1282, and the TTAB, 201 USPQ at 914, that this case is distinguishable on its facts. The TTAB noted that a purpose of the junior party's expansion was "an obvious attempt to 'create almost a solid wall' (in the words of the junior party) around the senior party to forestall any possibly further expansion by such party." 168 USPQ at 446. Thus, there was more than *mere knowledge of the existence of the senior party* present in that case to establish that the junior party's use was not in good faith. Moreover, the TTAB there acknowledged "precedent for restricting a prior user with a long history of a stable, non-expanding business to its actual area of use and

We do not rely for our decision on § 22 of the Lanham Act (15 U.S.C. § 1072), which provides that a registration serves as constructive notice of the claim of ownership of the registered mark, thus cutting off the defense of subsequent good faith adoption by another party. Although such an approach has been suggested, see Schwartz, *Concurrent Registration Under the Lanham Trademark Act of 1946: What is the Impact on Section 2(d) of Section 22?*, 55 T.M. Rep. 413 (1965), we do not believe that a mechanical approach which always defers to the first to register comprehends all of the factors which must be taken into account in order to come to a reasoned decision.[10] The problems of concurrent use issues must ultimately be solved by a comprehensive factual analysis, which the TTAB has both the power and the resources to make.

### Weiner King's Other Restaurants

We reverse the decision of the TTAB with respect to the rights to the resort community of Beach Haven, located on Long Beach Island, New Jersey. According to the record, this facility was opened in the 1973 season, and remained open until the landlord of the property refused to renew the lease in January of 1977. As of the close of the testimony period,[11] Weiner King has stated that the restaurant equipment is still located at Beach Haven

and that Weiner King is looking for a new location there. This testimony is undisputed.

Under these facts, we cannot hold that Weiner King has abandoned this facility. Operation of most businesses at a seashore resort located in the northern portions of this country is on a seasonal basis. Such use cannot be regarded as sporadic in a trademark sense. We do not view the unfortunate circumstance of the loss of a lease as constituting unequivocal abandonment. Such action is beyond the control of Weiner King, and the lapse of time between the refusal to renew the lease and the close of the testimony period does not appear to be so long that a reasonable businessman would have been expected to secure a new location within that period. This facility had been closed for but a single season.

The Third Circuit directed that the effect of WKNC's registrations on Weiner King's Beach Haven facility be assessed because the registrations issued prior to the opening of that facility. Because we view the Beach Haven area to be within the natural zone of expansion of Weiner King's operations, and because the facility was open prior to the initiation of the controversy between these parties, and because, in 1973, WKNC's expansion program, although considerable, did not appear to extend as far as New Jersey,[12] we hold that WKNC's regis-

---

to award a subsequent user with an expanding market area." *Id.*

In addition, we point out that, in discussing this issue, the courts and the commentators have often equated the terms "registrant" and "prior user" on the assumption that both are always the same party. Such authority must be read with care lest it be mistakenly applied to a situation such as this where the registrant is not the prior user. *See, e. g., John R. Thompson Co. v. Holloway*, 366 F.2d 108, 150 USPQ 728 (5th Cir. 1966), relied upon by Weiner King in its brief.

10. For instance, this approach would not reach the proper result in a case where the first registration was improvidently granted and should be cancelled. To rely on such a registration to restrict the expansion of a nonregistered prior user and then to cancel the registration would be an absurd result in a combined cancellation and concurrent use proceeding.

11. "[I]t is both necessary and proper for the Patent [and Trademark] Office to determine the 'conditions and limitations' with which the marks are to be registered 'on the basis of facts as they exist at the time when the issue of registrability is under consideration'. [Citations omitted.] In the present type of proceeding [concurrent use] this would apparently mean up to the close of the testimony period." *In re Beatrice Foods Co.*, 429 F.2d at 476, 57 CCPA at 1313–14, 166 USPQ at 438.

12. The District Court found, and the parties are thus bound by stipulation to the fact that, as of July 1972, WKNC had neither come into, nor formulated plans to come into, New Jersey. 407 F.Supp. at 1278. While we have already indicated our view that Weiner King has abandoned its rights to expand nationwide, it would be harsh indeed to hold that, as of 1973, it had abandoned the right to expand into its own backyard.

trations have no effect on Weiner King's rights at Beach Haven. In addition, we note that under our analysis of § 2(d), to allow WKNC into that area would serve only to produce confusion due to Weiner King's presence in that area for at least four years.

Although the Third Circuit ordered the District Court to restrain WKNC from using its marks on Long Beach Island to maintain the status quo until a final determination of the rights of the parties is made in the PTO, in the absence of any testimony from Weiner King to establish a reputation zone larger than Long Beach Island, we hold that Weiner King's concurrent use registration should reflect its right to use the mark on Long Beach Island on a permanent basis and that WKNC's registrations should be correspondingly restricted.

With respect to the facilities opened by Weiner King in Warminster, Pennsylvania, and White House, New Jersey, (in 1976 and 1977, respectively), the TTAB viewed penetration into those areas as "nothing more than a belated attempt or after-the-fact effort to expand its trading area before the appellate decision and in face of * * * WKNC's activities in [those areas] with franchisees." 201 USPQ at 915.

While we agree with the TTAB with respect to the Warminster, Pennsylvania, res-

taurant, we cannot agree with the decision as far as it affects the White House, New Jersey, restaurant. White House lies within the fifteen-mile zone of reputation or probable expansion found by the courts in the civil action, and thus Weiner King possesses superior rights to the use of WEINER KING marks in that location,[13] and there is thus no need to make a specific holding with respect to White House.

### Conclusion

So much of the TTAB's decision granting concurrent use registration rights to Weiner King for an area comprising a 15-mile radius surrounding Flemington, New Jersey, is *affirmed.*

The portion of the TTAB decision granting to WKNC concurrent use registration rights for the remainder of the United States is *affirmed,* except to the extent that those rights encompass Long Beach Island, New Jersey. Concurrent use registration rights to Long Beach Island, New Jersey, belong to Weiner King, and, to this extent, the decision of the TTAB is *reversed.*

*MODIFIED.*

---

**13.** In a footnote (note 14, 201 USPQ at 916) the TTAB indicated that it did not know whether the restaurant at White House was within the fifteen-mile zone surrounding Flemington, New

Jersey. We have taken judicial notice that the map of the state of New Jersey reveals that it is.