**GENNY'S DINER & PUB, INC., Plaintiff,**

v.

**SWEET DADDY'S, INC., Defendant.**

**Civ. A. No. C92–0796–L(H).**

United States District Court,
W.D. Kentucky,
Louisville Division.

Feb. 5, 1993.

Jack Wheat, Louisville, KY, for plaintiff.

Donald Heavrin, Louisville, KY, for defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This matter is before the Court on the motion of Plaintiff for a preliminary injunction. Plaintiff claims that Defendant's use of the mark "Sweet Daddy" constitutes unfair competition under federal and state law and service mark infringement of Plaintiff's state registration. In accordance with Rule 65, the Court will consolidate its consideration of the preliminary injunction with the merits of the equitable claim and, thus, review Plaintiff's motion as one for a permanent injunction.

### I.

A hearing on the motion apprised the Court of the following facts. Plaintiff, Genny's Diner & Pub, Inc., is the prior user of the mark in connection with a restaurant noted as "The Home of the Sweet Daddy Platter", a homemade, three-tiered, twenty-ounce, gourmet hamburger. Plaintiff's owner and operator, Frank C. Farris, testified that since August, 1985 his restaurant has expanded twice, currently seating one hundred patrons, located on Lexington Avenue. Exhibits # 2 through # 8 entered at the hearing (and attached to the Complaint) show that Plaintiff has achieved both regional and national notoriety and critical acclaim. Plaintiff advertises on all mediums and appears to have an established patronage. Although Mr. Farris testified that he may open another "Genny's" in the Louisville area, there was no suggestion that Plaintiff intends to expand outside the area at this time.

As of October 1992, Defendant, Sweet Daddy's, Inc., began operating a family restaurant in two Louisville locations under the name "Sweet Daddy's Country Cooking". Although there is a dispute about whether Defendant first used its mark in good faith as defined in federal unfair competition jurisprudence, testimony of Defendant's owner and operator, Michael Macatee, indicated that he independently arrived at the name "Sweet Daddy" through his experience in the restaurant business spanning thirty years. Further testimony for the Defendant established that the concept of "Sweet Daddy's Country Cooking" is used not only in connection with restaurant services but also on the packaging of food products that can be purchased at the restaurant for home preparation. Mr. Macatee also stated that he intends to open another restaurant in the Greater Cincinnati area and eventually franchise the "Sweet Daddy's Country Cooking" concept. Although Defendant represents that its application is pending as of October, 1992, neither party has federally registered the trademark, which for purposes of resolving Plaintiff's equitable claim is of limited consequence.

## II.

The relevant inquiry in a federal claim of unfair competition is whether Defendant's use of the name "Sweet Daddy" is likely to cause confusion as proscribed under the Lanham Act, 15 U.S.C. § 1125(a) (hereinafter "section 43(a)").[1] In *Frisch's Restaurants v. Elby's Big Boy, Inc.*, 670 F.2d 642 (6th Cir.1982), the Sixth Circuit set forth several factors to guide the application of this "likelihood of confusion" standard. Particularly probative in this case are the following factors: 1) strength of Plaintiff's mark; 2) relatedness of the goods; 3) similarity of the marks; 4) marketing channels used; and 5) likely degree of purchaser care.[2] All of these factors are interrelated. Considering them as a whole, the Court concludes that there is a strong likelihood of confusion under the circumstances in this case.

■ Plaintiff has a very strong trademark and tradition of usage. The "Sweet Daddy" mark is inherently distinctive and arbitrary. Its very distinctiveness has been particularly useful in generating tremendous publicity for Plaintiff both locally and throughout the nation. Although Plaintiff's use of the mark specifically relates to a specialty item (the twenty-ounce hamburger), Plaintiff has shown that its advertising and critical acclaim invariably and conspicuously relate the trademark "Sweet Daddy" to the restaurant in general. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183 (6th Cir.1988) (emphasizing that the test is not whether the goods and services are identical, but whether they are sufficiently related thereby creating confusion). Although Defendant's use of the trademark does not distinguish a specialty item but only the restaurant concept as a whole, namely an "affordable, fun, family restaurant", the fact that both parties are generally in the restaurant business makes the confusion more likely.

The competing uses of the term "Sweet Daddy" are entirely similar. Defendant's claim that no one could confuse these two

---

**1.** Section 43(a) of the Lanham Act provides in part:
 (a) Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name ..., which—
 (1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
15 U.S.C. § 1125(a) (1992 Supp.).

**2.** Other relevant factors include evidence of actual confusion and a defendant's intent in selecting the mark. *Frisch's Restaurants v. Elby's Big Boy, Inc.*, 670 F.2d 642, 648 (6th Cir.1982). Because these factors are also elements of Plaintiff's claim for damages, however, the Court sitting in equity will not foreclose a jury's findings on these issues. Absent these findings, the Court can still rule on Plaintiff's motion for an injunction since resolution of the equitable claim merely requires proof of the *likelihood* of confusion and since section 43(a) does not require proof that confusion arise from willful or intentional conduct. *Id.* at 647.

burgers sitting side-by-side is immaterial. In *Wynn Oil v. Thomas*, 839 F.2d 1183, 1187 (6th Cir.1988), the court logically and correctly stated that the test is not a "side-by-side" comparison but requires determining what actually occurs in the marketplace. Although Defendant's hamburger may have a puny appearance when compared to Plaintiff's hefty burger, this does not eliminate public confusion. Rather, the confusion begins not with visual comparisons of the products but upon hearing the name "Sweet Daddy". In this case, it is probable that where a customer eats is the result of an impulse decision. Consequently, Defendant's use of the trademark "Sweet Daddy" is even more likely to cause confusion due to the apparent lack of purchaser care.

 As an affirmative defense, Defendant contends that Plaintiff fails to invoke federal subject matter jurisdiction due to the nonexistence of a federal registration, as well as, the lack of diversity of citizenship. The scope of the Lanham Act, however, is the extent of Congress' power to legislate commerce. *See* 15 U.S.C. §§ 1121, 1125, 1127, and 28 U.S.C. § 1338; *see also Lyon v. Quality Courts United*, 249 F.2d 790 (6th Cir.1957). The tort of unfair competition does not require on the existence of federal registration, unlike a suit of infringement. *See* 15 U.S.C. § 1125. Because Plaintiff's and Defendant's use of the trademark involves uses in commerce that Congress may clearly regulate, this Court has subject matter jurisdiction.

### III.

Having found for the Plaintiff on the merits of the section 43(a) claim, the Court must determine whether there is proof of irreparable harm and whether the balance of the equities favor Plaintiff warranting the issuance of an injunction. *Frisch's Restaurants, Inc. v. Elby's Big Boy*, 670 F.2d 642, 651 (6th Cir.1982). Plaintiff has invested considerable effort since 1985 in the appropriation of the name "Sweet Daddy". The arbitrary and distinctive quality of the trademark has certainly inured to

Plaintiff's benefit, as evidenced by certain level of national renown. Likewise, Defendant has invested a considerable amount of capital in signage, menus, and advertising in the Louisville market.

 Notwithstanding, the Lanham Act federalizes common law trademark rights requiring not only the protection of the public interest but also the interests of market competitors who establish prior, continuous appropriation. Plaintiff has established just such a use. Where, as here, confusion is highly likely, Plaintiff's irreparable harm includes a loss of patronage upon the initial point of confusion, and until Defendant's non-affiliation with Plaintiff is cleared, Plaintiff's harm includes a loss of good will and reputation to the extent Defendant's product fails to meet customer expectations. In particular, the loss of this intangible measure of customer expectation, crucial to a profitable restaurant business—that is good-will—is irreparable or, at best, only very slowly regained. Damages for this harm are clearly inadequate. The Court, therefore, finds that absent equitable relief Plaintiff would suffer irreparable harm.

As for the balance of the equities, this Court's ruling invariably imposes a certain hardship upon Defendant by requiring it to change its name, restaurant signs, menus and advertising, but the inequity to Plaintiff would be much greater by not granting it relief to which it is entitled by law. And, Defendant could have avoided any hardship by conducting a more careful inquiry. One need to go no further than the South Central Bell Yellow Pages or a Lexis search to discover the use of the "Sweet Daddy" name.

Plaintiff prays for a nationwide injunction on the basis of the Tea Rose–Rectanus common law doctrine. Granting the full scope of such injunctive relief is not warranted at this time. Two turn-of-the-century Supreme Court decisions establish that a subsequent user may have concurrent rights in a mark only if its first use was geographically remote and in good faith. *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916)

*and United Drug Co. v. Theodore Rectanus, Co.,* 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918). This Court, however, is not persuaded that this stands for the proposition that Plaintiff's prior appropriation may preclude Defendant's use of the mark in areas where Plaintiff cannot establish even a potential for expansion into the remote area; or Defendant's intent to box-in Plaintiff's established market or palm-off Plaintiff's good-will; or the likelihood of confusion in the marketplace. The *Rectanus* Court, itself, stated that "the adoption of a trade-mark does not [at common law] project the right of protection in advance of the extension of the trade, or operate as a claim of territorial rights over areas into which it thereafter may be deemed desirable to extend the trade." *Rectanus* at 98, 39 S.Ct. at 51.

In this case, the Court concludes that Plaintiff's current market extends at least throughout an area of Greater Louisville, which would include the counties of Jefferson, Oldham, Shelby, Bullitt, Hardin, Spencer, and the Indiana counties of Scott, Clark, Floyd and Harrison. Beyond this territory, Plaintiff has not actually contested Defendant's use of the trademark by showing confusion, imminent expansion, or a probability of expansion to remote areas. This Court is not persuaded that the common law would weigh in favor of a remote prior user's unregistered interest in future expansion against a subsequent user's actual, albeit on notice, use. *See Weiner King, Inc. v. Wiener King Corp.,* 615 F.2d 512 (UCCPA 1980); *Raxton Corp. v. Anania Assoc., Inc.,* 635 F.2d 924 (1st Cir. 1980); *Dawn Donut Co. v. Hart's Food Stores, Inc.,* 267 F.2d 358 (2d Cir.1959). This is not a case where the plaintiff has availed itself to the statutory mechanism of registration which purports to confer nationwide constructive use. Rather, Plaintiff asserts this proposition on the basis of federal common law.[3]

Resolution of the additional scope of Plaintiff's rights under the Lanham Act may well be an issue ripe for adjudication at the time the interests of both parties is more tangible. Defendant has pending an application for federal registration that may provide other statutory grounds—perhaps even in another forum—for concurrent rights in remote areas. Indeed, the scope of this injunction could be the subject of a motion for modification of an injunctive order. At this time, however, the more pressing concern is the event of confusion proscribed under section 43(a), which at this juncture is contained within the contested market area, broadly described as 10 counties in Greater Louisville. This Court will not seek to remedy confusion that does not yet exist, particularly where such injunctive relief may work an especial hardship on Defendant and where Plaintiff has yet to establish a need for relief.

Because the Court is rendering equitable relief under the Lanham Act, it need not reach Plaintiff's state law claims. The Court is entering an Order consistent with this Memorandum Opinion.

### ORDER

This matter is before the Court on the motion of Plaintiff for a preliminary injunction. After a hearing on the motion in which the Court heard the testimony of witnesses and reviewed the exhibits entered therein, the Court has thoroughly reviewed the parties' memoranda and is entering a memorandum opinion setting forth its conclusions. Therefore, the Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the motion of the Plaintiff for a preliminary injunction is CONSOLIDATED with a hearing on the merits of Plaintiff's equitable claim. The Court, therefore, will review

---

**3.** At the hearing, Plaintiff mentioned state rights that in Kentucky may or may not confer statewide protection. Plaintiff, however, did not in its memoranda brief this issue in the context of the scope of an injunction. Notwithstanding, to the extent the Lanham Act protects unregistered prior users, that protection is limited to a trade area. Thus, state boundaries offer no logical framework for resolving this question of fact and may instead implicate federal pre-emption doctrines.

Plaintiff's motion as one for a permanent injunction;

IT IS FURTHER ORDERED that the motion of Plaintiff for a permanent injunction is SUSTAINED. The Defendant, its officers, agents, servants, employees, attorneys and any other persons in active concert or participation with them are hereby ENJOINED from making any use, or reference to any prior use, of the term "Sweet Daddy" or any other confusingly similar designation. Defendant shall immediately proceed with due diligence to remove, replace or obscure any reference to "Sweet Daddy" or any other confusingly similar designation from Defendant's facilities and the environs thereof, including signage, menus, and any other advertising or publication of any sort. Defendant is further ENJOINED from any other actions or inactions tending to create any impression that Defendant's restaurants are owned, operated, sponsored by, or otherwise affiliated with Plaintiff.

IT IS FURTHER ORDERED that the geographic area covered by this injunction shall include the Kentucky counties of Jefferson, Oldham, Shelby, Bullitt, Hardin, Spencer, and the Indiana counties of Scott, Clark, Floyd and Harrison.

This is a final and appealable order and there is no just reason for delay.

This 5th day of February, 1993.