560 F.Supp. 1253 (1983)
NOAH'S, INC., Plaintiff,
v.
NARK, INC., Defendant.
No. 81-1526C(2).
United States District Court, E.D. Missouri, E.D.
March 31, 1983.
*1254 *1255 McPherson D. Moore, St. Louis, Mo., Bruce W. McKee, Des Moines, Iowa, for plaintiff.
John K. Roedel, Jr., St. Louis, Mo., Thomas M. Ferrill, Jr., Fort Washington, Pa., for defendant.

MEMORANDUM
NANGLE, District Judge.
Plaintiff Noah, Inc. brought this cause of action pursuant to 15 U.S.C. § 1071 after the United States Trademark Trial and Appeal Board held that the defendant Nark, Inc. was entitled to a concurrent use registration for the trademark "Noah's Ark" for all of the United States, with the exception of a twenty-mile radius around the plaintiff's restaurant in Des Moines, Iowa, and around certain third party restaurants in Ohio, North Carolina, and New York City. In its decision, the Board awarded the plaintiff a limited area registration for a twenty-mile area around Des Moines, Iowa. The plaintiff appealed this decision to the United States Court of Customs and Patent Appeals. Subsequently, the defendant elected to have this case brought as a de novo proceeding in federal district court in accordance with 15 U.S.C. § 1071(b). The question presented by this appeal is whether the defendant is entitled to a registration, covering the United States, despite the fact that the plaintiff is admittedly the senior user and was the first party to file an application for a federal registration.
This case was tried to the court sitting without a jury. The court having considered the pleadings, the testimony of the witnesses, the documents in evidence and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure.

FINDINGS OF FACT
1. Plaintiff, Noah's, Inc., is an Iowa corporation with its principal place of business in Des Moines, Iowa at 2400 Ingersoll Avenue. Plaintiff was incorporated on November 4, 1963.
2. Defendant, Nark, Inc., is a Missouri corporation with its principal place of business in St. Charles, Missouri at 603 South Fifth Street.
3. On September 22, 1969, the plaintiff filed a trademark application, serial number 338,602, in the United States Patent and Trademark Office, seeking a federal trademark registration for the mark "Noah's Ark" and a design for pizza; the application was later amended on November 15, 1977 for restaurant services. A companion application, serial number 400,613 was filed by the plaintiff on August 19, 1971 for the word mark "Noah's Ark" for restaurant services. The Trademark Examiner deemed the application, serial number 338,602 registerable. Subsequently, on March 14, 1972 the trademark was published in the Official Gazette for opposition. Thereafter, on April 11, 1972 defendant, Nark, Inc., *1256 filed an opposition to the issuance of said trademark registration and instituted Trademark Opposition Number 52,901. On June 19, 1974, the United States Patent and Trademark suspended opposition proceedings and ordered a concurrent use proceeding number 417 between the plaintiff and defendant. As a result of this action, the trademark opposition proceeding number 52,901 and concurrent use proceeding number 417 were consolidated for trial before the United States Patent and Trademark Office. In its decision of September 8, 1981 the United States Patent Office, Trademark Trial and Appeal Board held that the plaintiff is entitled to limited federal registration rights within a twenty-mile radius of Des Moines, Iowa, and that the defendant was entitled to a concurrent use registration for the remaining portions of the country, with certain geographic third party exceptions. Subsequently, the defendant elected to have this matter brought before this court.
4. Prior to the incorporation of Noah's, Inc. the business of "Noah's Ark" was operated as a sole proprietorship of Noah Lacona beginning about November 1, 1950. Presently, the corporation is controlled, operated, and run by Noah Lacona. Jim Lacona is the son of Noah Lacona and currently the general manager of the restaurant.
5. Plaintiff operates a single restaurant located at 2400 Ingersoll Avenue in Des Moines, Iowa, which utilizes the mark "Noah's Ark" and has a sign in front of the restaurant bearing the logo of an Ark and the wording "Noah's Ark Restorante." It is a family oriented business with a speciality in Italian food.
6. Des Moines is located in the middle of the State of Iowa, about eighty to one hundred miles from the nearest state line, which is Missouri. The restaurant is located approximately six blocks from the interstate which runs through Des Moines. The restaurant is not on a federal or state highway, but is found on a city street. Less than one mile from the restaurant is Drake University. The majority of the restaurant's clientele is local.
7. From and after November 1950, the restaurant's menu, wine lists, and match books have displayed the trademark "Noah's Ark" and the logo of the ark. The sign utilized in 1950 bore the name "Noah's Ark." Since 1957, the plaintiff has used a different sign which features the mark "Noah's Ark" along with a characterization of an ark and animals.
8. In addition to displaying the mark on its sign, the plaintiff has sold goods related to its restaurant business under the "Noah's Ark" mark, such as pizza, Italian dressing and spaghetti sauce. Frozen pizzas were sold from the mid-1950's until the late 1960's in boxes bearing the logo of "Noah's Ark." This business was terminated in the late 1960's because of federal regulations restricting the running of a wholesale food business and a retail food business from the same location. Spaghetti sauce and Italian dressing are shipped on the special request of customers.
9. The "Noah's Ark" restaurant seats three hundred and twenty people. During the calendar years of 1968 through 1972 the plaintiff served almost one million meals. This figure does not include carry-outs and private parties.
10. Promotional expenditures for the same year approximated fifteen thousand dollars. Plaintiff advertises its restaurant through the use of a number of different types of media. This advertising reaches areas in excess of the twenty-mile radius around Des Moines. Plaintiff over the years has used radio, television, newspapers, telephone directories, school athletic programs, a race car and a parachute which are used for performances at public events and bear the "Noah's Ark" logo.
11. Plaintiff presently advertises in five telephone directories in the State of Iowa, all of which are outside of the twenty-mile radius, namely Ames, Boone, Marshalltown, Perry, and Winterset.
12. The plaintiff began to advertise on radio as early as 1955, including the advertisement of its frozen pizza product. In addition, the plaintiff has advertised in Ozark Airlines' magazine. Finally, the *1257 plaintiff advertises its restaurant in Iowa High School tournament programs, the state tournament programs, and at Drake University football and basketball programs.
13. There was testimony establishing at trial that the plaintiff's restaurant is one of the better known Des Moines restaurants to citizens of Iowa who live outside of the City of Des Moines and come to Des Moines for different activities.
14. On March 29, 1955, Noah Lacona obtained a State of Iowa registration for the mark "Noah's Ark," Registration Number 1889. The registration was renewed on February 3, 1975 as Number 1229.
15. Throughout its existence, the plaintiff has made essentially two limited attempts to expand its operations outside of the Des Moines area. From 1962 through June 1968 the plaintiff ran a "Noah's Ark" pizza parlor in Ames, Iowa. The restaurant was primarily a delivery and carry out restaurant for pizzas and Italian foods. In fact, ninety percent of its business was comprised of home deliveries. After closing the restaurant in 1967, the plaintiff failed to renew the lease on the building. Noah Lacona testified before the United States Trademark and Appeal Board, that during the period of time the shop was open, someone requested a franchise which Mr. Lacona refused to grant because it involved too much work.
16. In 1969 the plaintiff entered into its second attempt to expand its business by entering into an agreement with the proprietors of a small corner sandwich shop in Milwaukee, Wisconsin, licensing them to use the mark "Noah's Ark" for their shop. The shop was owned by a relative. It was operated for a period of about six months with a sign stating "Andy the Sandwich Man" and with a cardboard placard bearing the designation "Another Noah's Ark." The shop was not similar to the plaintiff's restaurant in the type of food or atmosphere. The "Noah's Ark" sign may have been used for a period of about six months; the sandwich shop went out of business shortly thereafter.
17. In January of 1962, Noah Lacona first approached counsel in order to investigate the possibility of obtaining federal trademark rights. An application was filed on September 22, 1969. However, in connection with the concurrent use proceedings before the United States Trademark and Trial and Appeal Board, Noah Lacona admitted in his affidavit that the plaintiff is not engaged or engaging in any franchising of Noah's Ark Restaurants within the State of Iowa or elsewhere.
18. At the time the plaintiff first adopted the mark "Noah's Ark" to identify his restaurant services, the defendant was not in existence. The defendant Nark, Inc. began to use the mark "Noah's Ark" for restaurant services in St. Charles, Missouri on July 17, 1967. The mark was adopted in good faith and without notice of the plaintiff's prior use.
19. The defendant operates one restaurant in St. Charles, Missouri, which has expanded in its seating capacity from five hundred and eighty to almost one thousand and now includes a motel with about two hundred rental units. The restaurant has a motif which is modeled after Noah's Ark. The restaurant is located at the St. Charles Interchange of Interstate Highway 70. The restaurant is visible from the highway and has a large billboard displaying an Ark.
20. The defendant's restaurant is primarily a steakhouse. However, lobster, shrimp, fish, and chicken are also served. The logo appears on menus, postal cards and match packs, in addition to the sign.
21. During the period from June 1967 through June 1978, the sales of food and beverages at the St. Charles Restaurant have exceeded nineteen million dollars. The defendant has promoted its restaurant in the newspapers, radio, telephone directories and has engaged in several promotional offers.
22. The defendant has shipped throughout the country steaks, sauces, and seasonings under the Noah's Ark label. In addition, these products have been sold to customers.
*1258 23. The defendant has attempted to engage in the franchising of its restaurant and has discussed the possibility with potential franchises in several locations throughout the country. In conjunction with these efforts the defendant has registered "Noah's Ark" as a service mark in Florida and Illinois. However, at the present the defendant is limited to operating its one restaurant in St. Charles, Missouri. The defendant's efforts to consummate franchises in part have been frustrated by this litigation. Once the defendant discloses the existence of this controversy over the mark, potential franchises have been unable to secure financing.

CONCLUSIONS OF LAW
This court has jurisdiction of this case pursuant to 15 U.S.C. § 1071 and 28 U.S.C. § 1338(a). Plaintiff contends that it has paramount rights to an unrestricted federal registration because it is the senior user of the trademark "Noah's Ark," and it was the first to file an application for its registration. Despite this earlier use of the mark by the plaintiff, the United States Trial and Appeal Board held that the defendant Nark, Inc. was entitled to a concurrent use registration for the trademark "Noah's Ark" for all of the United States, with the exception of a twenty-mile radius around the plaintiff's restaurant in Des Moines, Iowa, and around certain third party restaurants in Ohio, North Carolina, and New York City. Therefore, the question of law presented by this appeal is whether the plaintiff has abandoned or relinquished its right to obtain nationwide protection for its mark as a result of its inactivity or failure to expand over a reasonable period of time.
Subsequent to the decision of the United States Trademark Trial and Appeal Board, the plaintiff appealed the decision to the United States Court of Customs and Patent Appeals. The defendant then elected to have this case brought as a de novo proceeding in federal district court pursuant to 15 U.S.C. § 1071(b). In interpreting this statutory provision, the courts have held that although the civil action before a district court is intended to be a trial de novo, the decision of the Board "must be accepted as controlling on issues of fact unless the contrary is established by testimony which in character and amount carries through conviction." Redken Laboratories, Inc. v. Clairol, Inc., 501 F.2d 1403, 1404 (9th Cir.1974); American Heritage Ins. Co. v. Heritage Life Ins. Co., 494 F.2d 3, 10 (5th Cir.1974); Wilson Jones Co. v. Gilbert & Bennett Mfg. Co., 332 F.2d 216, 218 (2nd Cir.1964). In accordance with this standard, this court therefore is required to accept the factual findings of the agency, the contrary of which the parties have failed to establish in an amount that carries through with conviction.
The right of ownership in a mark arises from prior adoption and bona fide use of the mark in connection with a particular product or service whether in intrastate or interstate commerce. Weiner King, Inc. v. Weiner King Corp., 201 U.S.P.Q. 894, 908 (TTAB 1979). As a general rule, the prior user of a trademark is prima facie entitled to a registration covering the United States. Weiner King, Inc. v. Weiner King Corp., 201 U.S.P.Q. at 408; In Re Beatrice Foods, 429 F.2d 466, 475 (CCPA 1970); however, both the common law and the Trademark Act of 1946 have recognized an exception to this general rule. A subsequent user who adopts a trademark in good faith and without knowledge of its prior use may continue to use the mark if it has been adopted in another area of the country with some measure of commercial success and without any confusion as to its source. Weiner King, Inc. v. Weiner King Corp., 201 U.S.P.Q. at 909. This policy is expressly recognized in Section 2(d) of the statute which allows for the provision of a concurrent registration:
Provided, that when the Commissioner determines that confusion, mistake, or deception is not likely to result from the continued use by more than one person of the same or similar marks under conditions and limitations as to the mode or place of use of the marks or the goods in connection with which such marks are used, concurrent registration may be issued to such persons when they have *1259 become entitled to use such marks as a result of their concurrent lawful use in commerce.... Concurrent registrations may also be issued by the Commissioner when a court of competent jurisdiction has finally determined that more than one person is entitled to use the same or similar marks in commerce. In issuing concurrent registrations, the Commissioner shall prescribe conditions and limitations as to the mode or place of use of the mark or the goods in connection with which such mark is registered to the respective persons....
15 U.S.C. § 1052(d). This statutory provision has been interpreted to afford a junior user the right to utilize the mark and expand in areas in which he acquired rights in the mark prior to notice of an earlier user. However, after notice, "there is some justification for the right of the junior party to expand into unoccupied new territory so long as no confusion is likely to result by virtue of remote territorial areas and if it does not serve to intrude upon the prior user's normal expansion." Id. at 909. Nonetheless, expansion by the junior user after receipt of actual notice of the senior user's prior adoption will be deemed to be in bad faith if it is determined that the junior user was seeking to gain from the reputation of another. Id. at 915.
In addition to recognizing that a prior user's rights to a registration covering the United States, may be limited by a subsequent user's adoption of a service mark in another area of the country, the courts have further limited the rights of the prior user by recognizing that a senior party may abandon its right as a prior user to expand into a particular area or its right to enjoy nationwide protection of its mark. This doctrine is applied in the face of "inactivity over a reasonable period of time, which would be indicative of a static business, or wherein the senior party has contracted its trade or has withdrawn from a trading area after the junior party's use, thereby relinquishing national trademark rights to a junior party that has demonstrated substantial expansion activities and a dynamic business save for a small area or enclave into which the senior party has boxed himself." Id at 910. Therefore, the senior user of a mark has the right to exclude others from its use, only so long as the initial appropriation and use are accompanied by an intention to continue exploiting the mark commercially, rather than by an abandonment of its use.[1]La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc., 181 U.S.P.Q. 545, 548 (2nd Cir. 1974). "To prove bonafide usage, the proponent of the trademark must demonstrate that his use of the mark has been deliberate and continuous, not sporadic, casual, or transitional." Id.
Applying these principles to the facts of this case, it must be concluded that the plaintiff has abandoned its right to enjoy nationwide protection of its mark. The plaintiff has participated in little or no expansionist activities in any state other than Iowa. See Findings of Fact Nos. 14 and 15. Furthermore, at the time Mr. Lacona's affidavit was taken he admitted that the plaintiff is not engaged or engaging in any franchising of Noah's Ark Restaurants within the State of Iowa or elsewhere. See *1260 Findings of Fact No. 16. At best, other than the use of the mark in the State of Iowa, the plaintiff's use of the trademark "Noah's Ark" has been sporadic and transitional. However, the plaintiff has enjoyed statewide protection of his trademark since 1955. See Findings of Fact No. 13.[2] In addition, plaintiff advertisements reach citizens throughout the State of Iowa and the restaurant is one of the better known Des Moines restaurants to Iowans who visit Des Moines for various reasons. See Findings of Fact Nos. 9-12. On the basis of this record, it must be concluded that the plaintiff has relinquished its right as a prior user to a federally unrestricted trademark. However, the evidence establishes that the plaintiff has not abandoned its right either to have an exclusive mark for the complete State of Iowa, or to expand within that particular state.
In order for the defendant, as the junior party, to obtain nationwide protection of the mark "Noah's Ark," under the standard prescribed by the court in Weiner King, Inc. v. Weiner King Corp., not only must the evidence establish that the plaintiff has abandoned its right to enjoy nationwide protection, it must also be demonstrated that the junior partner has "substantial expansion activities and a dynamic business save for the small area or enclave into which the senior party has boxed himself." 20 U.S.P.Q. at 910. The United States Trademark Trial and Appeal Board concluded on the basis of the record before it that the defendant has made significant efforts to consummate franchises throughout the country and has been frustrated in its attempt largely if not almost completely by this litigation. Nark, Inc. v. Noah's, Inc., 212 U.S.P.Q. 934, 946. In view of this factual finding and this court's limited scope of review under 15 U.S.C. § 1071(b), this court feels obligated to uphold these findings of the board despite the fact that the defendant has only one restaurant located in St. Charles, Missouri. Upon the basis of this finding, it must be concluded that the defendant has participated in previous attempts at expansion and has present plans for further expansion. In re Beatrice Foods Co., 429 F.2d 466, 475 (Cust. & Pat. App.1970).[3] Therefore, equitable considerations require that the defendant receive a concurrent use registration for the trademark "Noah's Ark" for the entire United States with the exception of the State of Iowa; a twenty-mile radius around Mary Ellen Engel's restaurant in Cincinnati, Ohio; a twenty-mile radius around the "Noah's Ark" restaurant considered to be in Raleigh, North Carolina; and a twenty-mile radius around the "Noah's Ark Pub" in New York City, New York. In turn, the plaintiff is granted registrations on its application to register "Noah's Ark" for restaurant services for the State of Iowa. Furthermore, judgment will be entered for the plaintiff on the defendant's counterclaim. It must be concluded that the defendant was unable to consummate its attempts at franchising because of the institution of this litigation, rather than any communications that plaintiff might have *1261 had with any prospective franchises. In addition, the defendant failed to present any evidence at trial establishing that it suffered damages as a result of plaintiff's actions.
NOTES
[1] The plaintiff contends that in order to establish abandonment the burden rests on the defendant to show acts indicating a practical abandonment, and also an actual intent to abandon. Under 15 U.S.C. § 1127, the statute expressly provides that "A mark shall be deemed to be `abandoned'(a) when its use has been discontinued with intent not to resume. Intent not to resume may be inferred from the circumstances. Nonuse for two consecutive years shall be prima facie abandonment." Therefore, abandonment by a prior user requires a showing of an intent to abandon and an external act by which the intention is carried into effect. Johanna Farms, Inc. v. Citrus Bowl, Inc., 468 F.Supp. 866, 875 (ED NY 1978). See also, United States Jaycees v. Philadelphia Jaycees, 639 F.2d 134 (3d Cir.1981). The plaintiff is correct in pointing out that the burden rests on the defendant in proving abandonment, and that courts are hesitant to find abandonment because the finding results in a forfeiture of rights. United States Jaycees v. Philadelphia Jaycees, 639 F.2d at 139. However, it is the conclusion of this court that the facts of this case support a finding of abandonment in light of the plaintiff's admission that it is not engaging in franchising. See Findings of Fact No. 16.
[2] The trademark laws of the State of Iowa provide that a state trademark registration shall:

... be prima facie evidence of the validity of the registration and of the registrant's right to use the mark throughout the state in the manner described in the certificate of registration.
[3] The court in In re Beatrice Foods Co. reasoned that actual use in a territory was not necessary to establish rights in that territory. The court prescribed a test that should be applied to determine the respective rights of a senior and junior user of a trademark. The inquiry should focus on each party's (1) previous business activity; (2) previous expansion or lack thereof; (3) dominance of contiguous areas; (4) presently-planned expansion; and, where applicable; (5) possible market penetration by means of products brought in from other areas. 429 F.2d at 466. Under the facts of the present case, the test suggests that the defendant is entitled to a federal protected mark because of its plans for expansion and the plaintiff's admitted intent not to franchise its operation. This court disagrees with the Board's factual and legal conclusion that the most significant fact is "that unlike applicant's restaurant, opposer's restaurant possesses the special ambiance necessary to create a viable franchise system." The essential fact in this case is that the plaintiff has no present intent to market the trademark product throughout the United States.