THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: March 26, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*Boi Na Braza, LLC*
*v.*
*Terra Sul Corporation a/k/a Churrascaria Boi Na Brasa*

_____

Concurrent Use No. 94002525

_____

Justin S. Cohen of Thompson & Knight LLP for Boi Na Braza, LLC.

Eamon J. Wall of Wall & Tong LLP for Terra Sul Corporation a/k/a Churrascaria Boi Na Brasa.

_____

Before Rogers, Chief Administrative Trademark Judge, and Bucher and Hightower, Administrative Trademark Judges.

Opinion by Hightower, Administrative Trademark Judge:

In 2002, Boi Na Braza, Inc., now Boi Na Braza, LLC (both referred to herein as "BNB") and the plaintiff in this concurrent use proceeding, obtained two geographically unrestricted registrations. The first was for BOI NA BRAZA in standard characters[1] and the second was for the following composite word and design mark incorporating the phrase BOI NA BRAZA:

---

[1] Registration No. 2534608.



2

Both registrations covered restaurant services in Class 42.

Neither of the two marks was opposed when they were published a year apart. However, five years after the first registration issued for the standard character mark BOI NA BRAZA, Terra Sul Corporation, also known as Churrascaria Boi Na Brasa ("Terra Sul"), the defendant in this concurrent use proceeding, petitioned for cancellation of that first registration.[3]

Terra Sul was successful in establishing its priority of use of the mark BOI NA BRASA, and that BNB therefore was not entitled to maintain its geographically unrestricted registration for BOI NA BRAZA for restaurant services. Thus, on June 12, 2009, a panel of this Board ordered the registration cancelled.[4]

BNB then filed for the geographically restricted registration that is the focus of the instant proceeding, for BOI NA BRAZA for restaurant and bar services, in standard characters and with an English translation of the mark as meaning "steer

---

[2] Registration No. 2666968.

[3] No petition was filed to cancel the composite word and design mark, then or later.

[4] Cancellation No. 92047056. BNB filed the application that matured into the cancelled registration, No. 2534608, on July 1, 1999; the registration issued January 29, 2002 and was cancelled September 15, 2009.

over embers."[5]  In that application, BNB acknowledged at least some prior rights in Terra Sul as a prior user.[6]  The application was filed with a geographic restriction claiming the entire United States except for the state of New Jersey and names Terra Sul as the exception to BNB's exclusive right to use the mark in commerce.

Notwithstanding such acknowledgement, Terra Sul opposed BNB's application when it published for opposition;[7] but, on December 13, 2011, the Board dismissed that opposition in favor of this concurrent use proceeding, which was instituted by the same order dismissing the opposition.[8]

Terra Sul asserts, in its answer to the notice instituting this concurrent use proceeding, that it has rights more extensive than those acknowledged in the BNB application, claiming that it has used the mark CHURRASCARIA BOI NA BRASA in the states of New Jersey, New York "and elsewhere" since 1996.  Terra Sul asks that the mark in the involved application either be denied registration or restricted to BNB's three areas of actual use of the BOI NA BRAZA mark: Dallas, Texas; Atlanta, Georgia; and Cincinnati, Ohio.

---

[5] Application Serial No. 77779339, filed July 13, 2009, alleging first use on July 19, 1999 and first use in commerce on September 11, 2000.

[6] As detailed *infra*, Terra Sul has two later-filed applications, geographically unrestricted, that are currently suspended in the examining operation and not involved in this concurrent use proceeding.

[7] Opposition No. 91196845, opposing registration on the ground, *inter alia*, of a likelihood of confusion with its common-law mark BOI NA BRASA pursuant to Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d).

[8] The Board also applied the doctrine of merger and bar to dismiss *sua sponte* Terra Sul's additional grounds for opposition under Trademark Act Section 2(e).  Had Terra Sul not opposed, this concurrent use proceeding would have been instituted earlier and Terra Sul would have had the option to contest BNB's application in such proceeding, as it has done.

BNB has moved, in the alternative, to amend its application to restrict it to the entire United States except for the states of New Jersey and New York.[9]

While the concurrent use proceeding ostensibly focuses on BNB's involved application for a geographically restricted registration for BOI NA BRAZA, that application claims ownership of BNB's geographically unrestricted registration for the composite word and design mark shown above incorporating the phrase BOI NA BRAZA for restaurant services.[10] Thus, we now must determine whether BNB has carried its burden as plaintiff and shown that it is entitled to the geographically restricted registration for which it has applied. We also must determine whether BNB's claimed unrestricted Registration No. 2666968 should be restricted in accordance with whatever territorial restriction we find appropriate for BNB's involved application.

## The Record

The record includes the file of the involved application, BNB's unrestricted registration, and certain documents from Cancellation No. 92047056.[11]

---

[9] 10 TTABVUE. (Citations to the record include the TTABVUE entry number and, if applicable, the electronic page number where the document or testimony appears.)

[10] Registration No. 2666968 is claimed by BNB in its concurrent use application, and is therefore included in this proceeding. *See* Trademark Trial and Appeal Board Manual of Procedure (TBMP) § 1104 (3d ed. rev. 2 June 2013) (stating that registrations involved in a concurrent use proceeding include every registration claimed by the concurrent use applicant in the concurrent use application, unless there is no conflict between the mark in such registration and the mark of the other party to the proceeding). Even had BNB not claimed ownership of the registration, however, the Board would have been able to add it to this proceeding.

[11] Excerpts submitted as Exhibits C-G to Terra Sul's Notice of Reliance, 19 TTABVUE at 47 through 20 TTABVUE at 164. The remaining documents from the opposition and cancellation proceedings are not automatically of record, as the parties apparently assumed, but would not be material to our decision here.

The parties made the following additional evidence of record:

- Printouts from the electronic database records of the U.S. Patent and Trademark Office of the files of the following applications and registrations:

  - BNB's cancelled Registration No. 2534608.[12]

  - Two geographically unrestricted applications which were filed by Terra Sul after the involved application and which are not part of this proceeding.[13] One application is for the standard character mark BOI NA BRASA;[14] the other is for the composite shown below:



[15]

---

[12] Terra Sul's Notice of Reliance, Exhibit K, 21 TTABVUE at 22; BNB's Notice of Reliance, Exhibit 8, 13 TTABVUE at 321.

[13] Terra Sul submitted evidence that its unrestricted applications Serial Nos. 77813416 and 77813335 are suspended pending the outcome of this proceeding. Terra Sul's Notice of Reliance, Exhibits H and "I," 20 TTABVUE at 165-245. As noted, the suspended applications, not having been published for opposition, are not a part of this proceeding. *See* Section D *infra*.

[14] Application Serial No. 77813335, filed August 26, 2009 for "restaurant and bar services; restaurant services; restaurant and catering services; restaurant and café services; take out restaurant services" in International Class 43. Terra Sul's Notice of Reliance, Exhibit "I," 20 TTABVUE at 209; BNB's Notice of Reliance, Exhibit 6, 13 TTABVUE at 311.

[15] Application Serial No. 77813416, filed August 26, 2009 for "restaurant and bar services; restaurant services; restaurant and catering services; restaurant and café services; take out restaurant services" in International Class 43. Terra Sul's Notice of Reliance, Exhibit H, 20 TTABVUE at 165; BNB's Notice of Reliance, Exhibit 5, 13 TTABVUE at 302.

- The following discovery responses:

  o Terra Sul's written responses to BNB's requests for production, requests for admission, and interrogatories.[16]

  o BNB's responses to Terra Sul's interrogatories and requests for admission.[17]

- Pages from printed publications *The Star Ledger* (Newark, NJ);[18] *Luso-Americano*;[19] *Brazilian Times*;[20] *Brazilian Voice*;[21] and *Brazilian Press*.[22]

- Documents produced by Terra Sul and referenced in its interrogatory responses.[23] These include, e.g., printed publications, promotional and advertising invoices, photos of a "Churrascaria Boi-Na-Brasa" [sic] banner hanging over a street festival, a menu from the restaurant, certain of Terra Sul's corporate records, and a copy of a cease-and-desist letter counsel for BNB sent to Terra Sul's owner on January 11, 2007.

- The docket sheet for Cancellation No. 92047056,[24] as well as Terra Sul's trial brief[25] and reply brief[26] in that proceeding.

---

[16] BNB's Notice of Reliance, Exhibits 1-3, 13 TTABVUE at 7-81.

[17] Terra Sul's Notice of Reliance, Exhibits A and B, 19 TTABVUE at 7-46.

[18] BNB's Notice of Reliance, Exhibit 13, 14 TTABVUE at 54-55; Terra Sul's Notice of Reliance, Exhibit L, 21 TTABVUE at 103-04.

[19] BNB's Notice of Reliance, Exhibit 14, 14 TTABVUE at 56-64; Terra Sul's Notice of Reliance, Exhibit M, 21 TTABVUE at 105-13.

[20] BNB's Notice of Reliance, Exhibit 15, 14 TTABVUE at 65-68; Terra Sul's Notice of Reliance, Exhibit N, 21 TTABVUE at 114-17.

[21] BNB's Notice of Reliance, Exhibit 16, 14 TTABVUE at 69-72; Terra Sul's Notice of Reliance, Exhibit "O," 21 TTABVUE at 118-21.

[22] BNB's Notice of Reliance, Exhibit 17, 14 TTABVUE at 73-216; Terra Sul's Notice of Reliance, Exhibits P-Q, 21 TTABVUE at 122-279.

[23] BNB's Notice of Reliance, Exhibit 4, 13 TTABVUE at 82-301. Documents provided as all or part of an answer to an interrogatory may be made of record by notice of reliance. *See* TBMP §§ 704.10, 704.11. To the extent that any of the documents in this exhibit were produced by Terra Sul in the cancellation proceeding rather than this proceeding, we treat their admission as stipulated by the parties, because the parties also have introduced discovery and testimony deposition excerpts from that proceeding.

[24] Terra Sul's Notice of Reliance, Exhibit C, 19 TTABVUE at 47-49.

[25] BNB's Notice of Reliance, Exhibit 9, 13 TTABVUE at 323 through 14 TTABVUE at 11.

Finally, by Order of January 30, 2013, the Board granted motions by both parties to introduce portions of the discovery and testimony depositions of Terra Sul's owner, Farid Saleh, from the cancellation proceeding.[27]

The Parties

Terra Sul is owned by Brazilian native Farid Saleh, who opened a restaurant under the mark CHURRASCARIA BOI NA BRASA in Newark, New Jersey in April 1996.[28] Terra Sul acquired the restaurant in 1999.[29] Mr. Saleh also is president of a second company, Gullas Corp., which owns a restaurant named BOI NA BRASA BAR AND GRILL in Newark. This restaurant opened in 2005 less than a half-mile from CHURRASCARIA BOI NA BRASA.[30]

Terra Sul's records show that it has advertised sporadically, primarily in Portuguese-language newspapers. Some of these advertisements are local to New Jersey, while others are in newspaper editions with mastheads indicating broader distribution, as follows:

---

[26] *Id.*, Exhibit 10, 14 TTABVUE at 12; Terra Sul's Notice of Reliance, Exhibit F, 20 TTABVUE at 135.

[27] The discovery deposition, taken March 25, 2008, appears in the record (in whole or in part) as Exhibit A to Terra Sul's Motion to Use Testimony from a Prior Proceeding, 18 TTABVUE at 8-67; Exhibit D to Terra Sul's Notice of Reliance, 19 TTABVUE at 50-182, demonstrating that BNB introduced this deposition at trial in the cancellation proceeding; and BNB's Supplemental Notice of Reliance, Exhibit 1, 15 TTABVUE at 5-52. Mr. Saleh's testimony deposition, taken August 7, 2008, appears in the record as Exhibit B to Terra Sul's Motion to Use Testimony from a Prior Proceeding, 18 TTABVUE at 68-104; Exhibit 2 to BNB's Supplemental Notice of Reliance, 15 TTABVUE at 53-99; and as Exhibit A to Exhibit E, Terra Sul's Notice of Reliance, 19 TTABVUE at 210 through 20 TTABVUE at 83.

[28] Saleh Testimonial Deposition at 51, 18 TTABVUE at 73.

[29] Terra Sul acquired the restaurant from original owner Churrascaria Boi Na Brasa Corp., of which Mr. Saleh also was president. *Id.* at 6-7, 19 TTABVUE 212.

[30] *Id.* at 66, 18 TTABVUE at 77; Terra Sul's Response to Interrogatory No. 1, BNB's Notice of Reliance, Exhibit 3 at 4, 13 TTABVUE at 56.

- *Brazilian Press*:  Editions of this newspaper appear to be distributed in three different areas:

  - New Jersey;[31]

  - New Jersey, New York, Connecticut, Massachusetts, Pennsylvania, Washington, D.C., and Maryland;[32] and

  - New Jersey, New York, Connecticut, Massachusetts, Florida, Washington DC, Virginia, Maryland, California, Rhode Island, Pennsylvania, and Georgia.[33]

- *Brazilian Times*:  New York, New Jersey, Connecticut, and Pennsylvania.[34]

- *Luso-Americano*: Masthead not included, but the paper references Philadelphia, Pennsylvania and Mount Vernon and Yonkers, New York.[35]

Terra Sul also has done some television advertising, both nationwide on Portuguese-language channel TV Globo International (a Dish Network channel), and in English through Comcast Cable on the Food Network, ESPN, CNN, and Fox, reaching New Jersey and New York City, including the borough of Staten Island.[36]

Mr. Saleh testified that he has considered opening a restaurant in New York, and has customers who reside there.[37]  Terra Sul admits that it does not render any

---

[31] *See* 21 TTABVUE at 134, 210, 234, 250, 259.

[32] *See id.* at 268, 271.

[33] *See id.* at 126.

[34] *See, e.g., id.* at 115.

[35] *See* 14 TTABVUE at 60-61.

[36] Saleh Discovery Deposition at 70-74, 15 TTABVUE at 39-43; 19 TTABVUE at 164, 170, 172.

[37] Saleh Testimony Deposition at 68, 15 TTABVUE at 80.  *See also, e.g.*, Terra Sul's Response to Interrogatory No. 15, BNB's Notice of Reliance, Exhibit 3, 13 TTABVUE  at 64 ("No goods or services were sold in the State of New York.  However, many New York residents have been and continue to be patrons of Excepted User's restaurants . . . .") and Response to Interrogatory No. 23, 13 TTABVUE at 70 ("Excepted User may decide in the

8

restaurant or bar services in New York.[38] However, it provided related catering services at a party at a home in New York in approximately 2005.[39] Terra Sul also distributed flyers and T-shirts at a large Brazilian party in New York in 2005 and 2006.[40] Terra Sul maintains a promotional website at www.boinabrasa.com.[41]

BNB was incorporated in 1999 by brothers Jonas, Joseph, and Julio Matheus, also Brazilian natives, and proceeded to open Brazilian barbeque-style restaurants.[42] BNB has used the mark BOI NA BRAZA in connection with its restaurants in the Dallas, Texas area; Cincinnati, Ohio; and previously, including through a licensee, in Atlanta, Georgia.[43] BNB has spent more than $2 million advertising its mark.[44] BNB advertises nationally and internationally in *American Way* and *Delta Sky*, the inflight magazines of American Airlines and Delta, respectively, and locally in publications in Dallas, Cincinnati, and Atlanta.[45] BNB maintains a promotional website at boinabraza.com.[46]

---

future to open additional restaurants using the same or similar names in nearby geographic regions, but Excepted User has made no such plans at this time.").

[38] Terra Sul's Response to Request for Admission No. 9, BNB's Notice of Reliance, Exhibit 2, 13 TTABVUE at 48.

[39] Saleh Testimonial Deposition at 47-48, 88, 91, 15 TTABVUE at 70-71, 91, 94.

[40] Saleh Discovery Deposition at 81, 15 TTABVUE at 50.

[41] Saleh Testimonial Deposition at 58, 15 TTABVUE at 75.

[42] BNB's Responses to Interrogatory Nos. 16, 26-27, 30, Terra Sul's Notice of Reliance, Exhibit A, 19 TTABVUE at 16, 22-23; *id.*, Exhibit E to Exhibit E, 20 TTABVUE at 134.

[43] *Id.*, BNB's Response to Interrogatory No. 23, 19 TTABVUE at 20.

[44] *Id.*, BNB's Response to Interrogatory No. 34, 19 TTABVUE at 25.

[45] *Id.*, BNB's Responses to Interrogatory Nos. 20, 23, 32, 42, 43, 19 TTABVUE at 17-18, 20-21, 24, 28-29.

[46] *Id.*, BNB's Responses to Interrogatory Nos. 13, 17, 20, 23, 32, 42, 43, 19 TTABVUE at 15, 16, 18, 20, 24, 28, 29. There is no evidence either party's website has a disclaimer.

BNB contends that "boi na brasa" is commonly used in Brazil, and that it merely changed the "s" to a "z" to make its restaurant name more distinctive:

> [T]he name "boi na brasa" is a well known name that is often used in Brazil. Based on their knowledge of the name from its use in Brazil, the Matheus brothers chose this name for their restaurant business and began marketing the business as such at least as early as July 1, 1999. The Matheus brothers changed the "s" to a "z" to give the name more distinctiveness.[47]

Terra Sul disputes that "boi na brasa" is well-known in Brazil. Mr. Saleh adopted the mark "based on his fond memories of a Brazilian butcher shop in his village known as 'boi na brasa.'"[48]

## Analysis

As we stated in *America's Best Franchising Inc. v. Abbott*, 106 USPQ2d 1540 (TTAB 2013) ("*America's Best*"), concurrent use proceedings are governed by the following proviso of Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d):

> [I]f the Director determines that confusion, mistake, or deception is not likely to result from the continued use by more than one person of the same or similar marks under conditions and limitations as to the mode or place of use of the marks or the goods on or in connection with which such marks are used, concurrent registrations may be issued to such persons when they have become entitled to use such marks as a result of the concurrent lawful use in commerce prior to (1) the earliest of the filing dates of the applications pending or of any registration issued under this chapter . . . .

---

[47] *Id.*, BNB's Responses to Interrogatory Nos. 16, 18, 31, 19 TTABVUE at 16, 17, 24.

[48] Terra Sul's Response to Interrogatory No. 1, BNB's Notice of Reliance, Exhibit 3 at 4, 13 TTABVUE at 56.

In other words, there are two "conditions precedent to the issuance of concurrent registrations," specifically that: (1) the parties are presently entitled to concurrently use the mark in commerce, and (2) there is no likelihood of confusion, mistake or deception in the market place as to the source of the goods resulting from the continued concurrent use of the trademark(s). *America's Best*, 106 USPQ2d at 1547 (quoting *In re Beatrice Foods Co.*, 429 F.2d 466, 166 USPQ 431, 435-36 (CCPA 1970)). Furthermore, when a claim is made of concurrent rights, such use must begin prior to the filing date of any application by a conflicting claimant to the same mark or one which may be likely to cause confusion with that of the claimant. *Action Temp. Servs. Inc. v. Labor Force, Inc.*, 870 F.2d 1563, 10 USPQ2d 1307, 1309 (Fed. Cir. 1989).

The applicant for concurrent registration is the plaintiff in a concurrent use proceeding and has the burden of proof to demonstrate its entitlement to a concurrent use registration. *Over the Rainbow, Ltd. v. Over the Rainbow, Inc.*, 227 USPQ 879, 883 (TTAB 1985); *see also Gray v. Daffy Dan's Bargaintown*, 823 F.2d 522, 3 USPQ2d 1306, 1308 (Fed. Cir. 1987) (stating that concurrent use plaintiff "was not 'entitled' to [a concurrent use] registration unless he also satisfied the 'touchstone' requirement of no likelihood of confusion with [the defendant's] use"); Trademark Rule § 2.99(e), 37 C.F.R. § 2.99(e).

In a concurrent use registration, the "conditions and limitations as to the mode or place of" use almost always take the form of a geographic restriction, especially where the Board, rather than a court, approves registration based on

evidence regarding the actual "conditions and limitations." *See Holmes Oil Co. v. Myers Cruizers of Mena, Inc.*, 101 USPQ2d 1148, 1149 (TTAB 2011). The respective rights of the parties to registration are determined on the basis of the facts as they exist up to and until the close of the testimony period. *Nark, Inc. v. Noah's, Inc.*, 212 USPQ 934, 944 (TTAB 1981).

A.    First Condition Precedent to Issuance of Concurrent Use Registration

We begin by finding that the first condition to issuance of a concurrent use registration, which is "primarily jurisdictional in nature," has been met. *America's Best*, 106 USPQ2d at 1548 (quoting *In re Beatrice Foods Co.*, 166 USPQ at 436). Because BNB's claim of first use is prior to the filing dates of any of Terra Sul's applications or registrations, BNB has met the first or jurisdictional requirement for a concurrent use registration.[49] *Over the Rainbow, Ltd.,* 227 USPQ at 882. BNB states that it had no knowledge of Terra Sul's use of the name BOI NA BRASA "until it was informed by Terra Sul's counsel, on or about January 19, 2007."[50] The evidence is consistent with BNB's actions, and we find that BNB adopted the BOI NA BRAZA mark in good faith and without knowledge of Terra Sul's prior use of BOI NA BRASA. That is, BNB is entitled to seek a concurrent use registration based on its use of its mark in commerce. *See Woman's World Shops Inc. v. Lane Bryant Inc.*, 5 USPQ2d 1985, 1987-88 (TTAB 1988) (stating that

---

[49] Furthermore, as noted *supra*, although Terra Sul has pending applications not involved in this proceeding, their filing dates are later than BNB's filing date. Therefore, Terra Sul's uninvolved applications were not entitled to examination priority.

[50] BNB's Response to Interrogatory No. 19, Terra Sul's Notice of Reliance, Exhibit A, 19 TTABVUE at 17.

"concurrent rights arise where a party, in good faith and without knowledge of a prior party's use in another geographical area, adopts and uses the same or similar mark for the same or like goods or services within its own geographical area with a measure of commercial success and public recognition and without any resulting confusion as to source"); *Olé Taco Inc. v. Tacos Ole, Inc.*, 221 USPQ 912, 915 (TTAB 1984) ("We have no reason to assume that this was other than an innocent use without notice of registrant's use and activity under the [involved] mark" where uncontroverted evidence established the concurrent use applicant's use before the excepted registrant's filing date).

In such circumstances, "it is settled law that each party has a right to use its mark in its own initial [geographic] area of use." *Weiner King, Inc. v. The Wiener King Corp.*, 615 F.2d 512, 204 USPQ 820, 829 (CCPA 1980) ("*Weiner King*"). While the parties' rights to use their respective marks in their initial areas of use are thus established, what remains in dispute "are the registrable rights to the remainder of the United States possessed by each party," to which we will return in Part C *infra*. *Id.*; *see also Alfred Dunhill of London, Inc. v. Dunhill Tailored Clothes, Inc.*, 293 F.2d 685, 130 USPQ 412, 418-20 (CCPA 1961).

B.    Likelihood of Confusion

We next consider the second "condition precedent" or threshold question, that is, whether there would "be no likelihood of confusion, mistake or deception in the market place as to the source of the goods resulting from the continued concurrent use of the trademark[s]" with an appropriate geographic restriction. *In re Beatrice Foods Co.*, 166 USPQ at 436.

13

As the Board stated in instituting this case, we found that there was a likelihood of confusion between BNB's mark BOI NA BRAZA and Terra Sul's mark BOI NA BRASA for restaurant services in Cancellation No. 92047056.[51] That is not, however, the question now before us. *See America's Best*, 106 USPQ2d at 1549. Rather, "[t]he question before us is whether a likelihood of confusion would be avoided by a geographic restriction." *Id.* The record herein supports a conclusion that confusion would not be likely with an appropriate geographic restriction.

First, the parties have already coexisted for some 15 years with no credible evidence of actual confusion.[52] The lack of evidence of confusion weighs against finding that there is a likelihood of confusion in geographically restricted territories. *See, e.g., G.H. Mumm & Cie v. Desnoes & Geddes Ltd.*, 917 F.2d 1292, 16 USPQ2d 1635, 1638 (Fed. Cir. 1990) (lack of actual confusion in more than a decade weighs against finding that confusion is likely); *Citigroup Inc. v. Capital City Bank Group Inc.*, 94 USPQ2d 1645, 1664-65 (TTAB 2010), *aff'd*, 637 F.3d 1344, 98 USPQ2d 1253 (Fed. Cir. 2011). Moreover, the Board and other tribunals have often found that confusion can be avoided when restaurant services in particular are offered under identical marks but in geographically restricted territories. *See, e.g., Weiner King*, 204 USPQ 820 (permitting concurrent registration of WIENER KING with and without design for hot dog restaurants and WEINER KING with and without

---

[51] BNB also admits that BOI NA BRASA and BOI NA BRAZA are confusingly similar when used in connection with restaurant services. BNB's Response to Request for Admission No. 22, Terra Sul's Notice of Reliance, Exhibit B, 19 TTABVUE at 44.

[52] *See* Terra Sul's Responses to Interrogatory Nos. 25-28, BNB's Notice of Reliance, 13 TTABVUE at 70-72.

design for hot dog restaurants in separate geographic territories); *Pinocchio's Pizza Inc. v. Sandra Inc.*, 11 USPQ2d 1227 (TTAB 1989) (permitting concurrent registration of PINOCCHIOS for restaurant services featuring pizza and PINOCCHIO'S for restaurant services in separate geographic territories); *Nark, Inc.*, 212 USPQ 934 (granting registration for NOAH'S ARK for restaurant services nationwide except for 20-mile radius around each of four restaurants using similar marks in different states); *see also Brennan's, Inc. v. Brennan's Rest., LLC*, 360 F.3d 125, 69 USPQ2d 1939 (2d Cir. 2004) (finding no likelihood of confusion between Brennan's restaurants in New Orleans and New York).   Restaurant services by definition are rendered in a particular geographic location.  *Cf. America's Best*, 106 USPQ2d at 1550, 1552.

Our conclusion is not changed by the fact that the parties' advertising has overlapped.  Overlapping advertising and customer solicitation does not require a determination that there is a likelihood of confusion.  *CDS Inc. v. I.C.E.D. Mgmt., Inc.*, 80 USPQ2d 1572, 1583 (TTAB 2006) (construing *Amalgamated Bank of New York v. Amalgamated Trust & Sav. Bank*, 842 F.2d 1270, 6 USPQ2d 1305 (Fed. Cir. 1988)).  Nor does the fact that both parties have a presence on the Internet. *America's Best*, 109 USPQ2d at 1551-52.   In this case, the overlap in advertising is minimal and insufficient to create a likelihood of confusion.

For all of these reasons, we find that confusion would not be likely with an appropriate geographic restriction, as discussed below.

C.    Territory

Having found both requirements for a concurrent use application satisfied, we turn to the appropriate geographic restriction, that is, the territory to which each party is entitled.  Actual use in a territory is not necessary to establish a party's rights in that territory.  *Weiner King*, 204 USPQ at 830.  "As a general rule, a prior user of a mark is entitled to a registration covering the entire United States limited only to the extent that the subsequent user can establish that no likelihood of confusion exists and that it has concurrent rights in its actual area of use, plus its area of natural expansion."  *Pinocchio's Pizza*, 11 USPQ2d at 1228.  However, as explained further *infra*, this presumption can be overcome, for example, where – as here – the senior user of a mark remains static and the junior user is the first to file for a registration.  *See In re Beatrice Foods Co.*, 166 USPQ at 437 n.13 ("On the other hand, where the prior user does not apply for a registration before registration is granted to another, there may be valid grounds, based on a policy of rewarding those who first seek federal registration, and a consideration of the rights created by the existing registration, for limiting his [i.e., the prior user's] registration to the area of actual use and permitting the prior registrant to retain the nationwide protection of the act restricted only by the territory of the prior user.").

The inquiry should focus on the party's (1) previous business activity; (2) previous expansion or lack thereof; (3) dominance of contiguous areas; (4) presently planned expansion; and, where applicable (5) possible market penetration by means of products brought in from other areas.  *Weiner King*, 204 USPQ at 830.  Furthermore, as the predecessor to our primary reviewing court

16

pointed out in *Weiner King*, "there is a policy of encouraging prompt registration of marks by rewarding those who first seek registration under the Lanham Act" – in this case, BNB. *Id.*, 204 USPQ at 830. Perhaps not coincidentally, the concurrent use proviso of Section 2(d) "exhibits no bias in favor of the prior user." *Id.* at 831; *see also America's Best*, 106 USPQ2d at 1553. In fact, through inaction over a considerable period of time, a prior user may have given up the right to expand use of its mark outside of its trading area and,

> in effect, abandoned or relinquished the right as a prior user to expand into a particular area or the right to enjoy nationwide protection for its mark as a result of inactivity over a reasonable period of time, which would be indicative of a static business . . . .

*Nark, Inc.*, 212 USPQ at 944 (quotation omitted); *see also Noah's, Inc. v. Nark, Inc.*, 560 F. Supp. 1253, 222 USPQ 697, 701 (E.D. Mo. 1983), *aff'd*, 728 F.2d 410 (8th Cir. 1984).

This case also presents the unusual circumstance in which the applicant/junior user has an incontestable right to use its mark as provided in Section 15 of the Trademark Act, here for the composite mark that is the subject of Registration No. 2666968, which incorporates the literal element BOI NA BRAZA.[53] An "incontestable registration" cannot be challenged on the basis of prior rights in a mark substantially similar to the registered mark. *See* Sections 15 and 33(b)(5) of the Trademark Act, 15 U.S.C. §§ 1065 and 1115(b)(5). Under such circumstances, a prior user normally may carve out of an incontestable registration only "the specific

---

[53] *See* Terra Sul's Notice of Reliance, Exhibit J, 20 TTABVUE at 247, 252.

area in which it has established its prior rights prior to actual or constructive notice

of said registration." *Thriftimart, Inc. v. Scot Lad Foods, Inc.*, 207 USPQ 330, 334

(TTAB 1980) ("*Thriftimart*"). As we explained in *Thriftimart*:

> This is reflected in Section 15 of the statute and more particularly spelled out in Section 33(b)(5) which provides as a defense to a cause of action based on a registered mark that has become incontestable, that
>
>> "* * * the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to registration of the mark under this Act or publication of the registered mark under subsection (c) of Section 12 of this act: *Provided, however, that this defense or defect shall apply only for the area in which such prior continuous use is proved * * *"*

*Thriftimart*, 207 USPQ at 334.[54]

Over 18 years, Terra Sul and its predecessor-in-interest have never expanded

outside of their Newark neighborhood, and Terra Sul has no tangible, current plans

to do so. In contrast, BNB, the first to file and register, has offered restaurant

_____

[54] We note that Trademark Act Section 33(b)(5) has been amended and now reads as follows:

> (5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to (A) the date of constructive use of the mark established pursuant to section 1057(c) of this title, (B) the registration of the mark under this Act if the application for registration is filed before the effective date of the Trademark Law Revision Act of 1988, or (C) publication of the registered mark under subsection (c) of section 1062 of this title: Provided, however, That this defense or defect shall apply only for the area in which such continuous prior use is proved . . . .

services in three U.S. cities geographically remote from one another and from Terra Sul. BNB asserts that "[t]his dispute has always been about New York City."[55] But, while BNB states that it "intends to open a restaurant in New York under the 'BOI NA BRAZA' mark in the future,"[56] BNB has provided no evidence of any more specific plans to expand there. *See, e.g.*, *Spartan Food Sys. Inc. v. HFS Corp.*, 813 F.2d 1279, 2 USPQ2d 1063, 1066 (4th Cir. 1987) (lack of concrete plans to expand into adversary's geographic trading area weighed against finding of likelihood of confusion); *cf. Surfvivor Media Inc. v. Survivor Prods.*, 406 F.3d 625, 74 USPQ2d 1621, 1626 (9th Cir. 2005) (lack of evidence of any concrete plans to expand into adversary's line of business weighed against finding of likelihood of confusion). BNB also indicated its willingness to cede the territory by moving in the alternative to amend its application to exclude the entire state of New York along with New Jersey, arguing that it would prevent any likelihood of confusion by serving as a buffer zone between the parties, neither of which has operations in New York.[57]

Terra Sul has not operated a restaurant in New York. Although Terra Sul catered and promoted its services there to a very limited extent, there is no evidence establishing any such use or promotion targeted to New York prior to constructive notice of BNB's rights on December 24, 2002, when BNB's Registration No. 2666968 issued. However, there is record evidence suggesting that Newark, while not contiguous, is a neighbor near enough to draw New York City diners. The parties

[55] BNB's Brief at 5.

[56] BNB's Response to Interrogatory No. 41, Terra Sul's Notice of Reliance, Exhibit A, TTABVUE 19 at 28.

[57] *See* BNB's Brief at 18.

do little to enlighten the Board as to the degree of ease with which New York diners may traverse the "nearly ten (10) miles, three river crossings (including the Holland Tunnel), and Jersey City"[58] to reach Terra Sul's restaurants in Newark's Ironbound neighborhood. Because it is hearsay, we cannot accept as true the *Village Voice*'s assertion that this journey can be completed via "an easy ride on the PATH."[59] Nor is there evidence that prospective New York diners would consider the trip routine. However, we conclude that the New York restaurant scene's embrace is sufficiently broad to reach Newark, based on the paper's selection of Terra Sul's original Boi Na Brasa restaurant as "Best Choice Churrascaria" in its "the best of nyc 2006"[60] and Terra Sul's evidence that some of its customers live in New York.[61]

For all of these reasons, we find that BNB is entitled to register the mark BOI NA BRAZA for restaurant and bar services throughout the United States excluding the states of New Jersey and New York. We therefore grant BNB's motion to amend the application.

D.      Terra Sul's Unrestricted Applications

Should Terra Sul elect to do so, it may amend its unrestricted applications, Serial Nos. 77813416 and 77813335, to add a concurrent use statement in the following form:

---

[58] *Id.* at 6.

[59] Saleh Testimonial Deposition, Exhibit 22, TTABVUE 18 at 98; *see also* Terra Sul's Notice of Reliance, Exhibit D, TTABVUE 20 at 77.

[60] *Id.*

[61] *See supra* n.37; Saleh Testimonial Deposition, Exhibit 22, 18 TTABVUE at 98; Terra Sul's Notice of Reliance, Exhibit D, 20 TTABVUE at 77.

> Registration limited to the area comprising the states of New Jersey and New York pursuant to Concurrent Use Proceeding No. 94002525. Concurrent registration with Registration No. 2666968 and Application Serial No. 77779339.[62]

*See* Trademark Manual of Examining Procedure (TMEP) § 1207.04 (October 2013).

*Decision:* BNB is entitled to a concurrent use registration for its identified services. Application Serial No. 77779339 shall proceed to registration with the following revised concurrent use statement, which will also be added to BNB's Registration No. 2666968:

> Registration limited to the area comprising the entire United States except the states of New Jersey and New York pursuant to Concurrent Use Proceeding No. 94002525. Concurrent registration with Terra Sul Corporation a/k/a Churrascaria Boi Na Brasa.

---

[62] Of course, should a concurrent use registration issue to BNB while Terra Sul's applications are still pending, the statement should be updated to reflect the eventual registration number for BNB's geographically restricted registration that will be based on the involved application.